[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 110 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 113 
The purpose of this litigation is to test the constitutionality of a recently-enacted statute requiring railroad corporations in this state to pay the wages of their employees semi-monthly and in cash. In order to present the question to the courts for determination the plaintiffs have brought suit in equity against the state commissioner of labor to restrain him from instituting actions to recover the penalties prescribed by the statute for non-compliance with its provisions. Judgment was rendered in favor of the defendant at Special Term, and affirmed, by a divided court, at the Appellate Division. The plaintiff has appealed to this court.
In the briefs of counsel and in the argument at the bar it has been assumed that the provisions of the Labor Law which are the subject of attack operate not only to introduce the requirement of semi-monthly payments into all contracts between the railroad company and its employees in which there is no express stipulation as to the time when wages shall be payable, but also to prohibit such corporations from making any contracts with their employees which shall vary the time of payment from that prescribed in the statute. This view is sustained by the amendment to the Penal Law enacted in 1909 when section 1272 was made to provide that a corporation which does not pay the wages of all its employees in accordance with the provisions of the Labor Law is guilty of a misdemeanor. (Laws of 1909, chap. 205.) It is true *Page 114 
that this amendment was not adopted until after the commencement of the present action, but it was in force when the judgment was rendered and it serves to indicate the intent of the legislature in enacting the Labor Law itself. Where railroad corporations are commanded to pay the wages of their employees at fixed periods and are made liable to indictment and criminal punishment for failure so to do, the implication is tolerably clear that they may not enter into contracts containing provisions at variance with the legislative command. Accordingly I think we must treat the requirement of the Labor Law that the employees of a steam surface railroad corporation shall be paid semi-monthly and in cash as a restraint upon the freedom of such corporations to make any contract to pay the wages of their employees otherwise than semi-monthly and in cash. If this were not the necessary construction the legislation in question would present no serious constitutional difficulty. If we were at liberty to hold that the requirement for semi-monthly cash payments was to apply only in cases where it was not stipulated otherwise in the contract of employment, neither the railroad companies nor their employees would have even any plausible cause for complaint, inasmuch as both master and servant would be left at liberty to make any contract they pleased in regard to the time when the servant's wages should be payable and the medium in which they should be paid. The substance of the grievance which is asserted in behalf of the corporations in this litigation is that they are left no option in the matter but must pay in the method and medium prescribed, although their employees might be entirely willing to agree otherwise. Their contention is that the Labor Law deprives them of the right of making contracts with their employees on advantageous terms, and that this is beyond the power of the legislature. Of course, if there is no power in the legislature thus to limit the right of contract between steam surface railroad corporations and their employees, this legislation must fail.
The section of the Labor Law requiring the cash payment *Page 115 
of wages applies to manufacturing, mining, quarrying, mercantile, railroad, street railway, canal, steamboat, telegraph, telephone and express companies; every corporation engaged in harvesting and storing ice; every water company not municipal; and every person, firm or corporation engaged in any public work for the state or any municipal corporation. This section is much wider in its application than the clause prescribing the semi-monthly payment of wages, which relates only to "every person or corporation operating a steam surface railroad."
These enactments are attacked as unconstitutional on three grounds. It is contended, first, that they deprive the plaintiff and its employees of liberty and property without due process of law; secondly, that they deny them the equal protection of the laws; and, thirdly, that they constitute a restriction upon interstate commerce. Although the argument has covered a wide field an analysis of the discussion resolves the defense into two propositions of law: (1) That the legislation which is the subject of attack is a proper exercise of the reserved power two amend corporate charters contained in the state constitution; and (2) that it constitutes a proper and legitimate exercise of the police power of the state. If either of these propositions is sound the legislation is constitutional and the judgment must be affirmed.
In this state, since the enactment of chapter 381 of the Laws of 1889, many classes of corporations, including steam surface railroad companies, have been required by law to pay their employees in cash. An act to provide for the weekly payment of wages by corporations was passed in the following year (Laws of 1890, ch. 388) and amended three years later (Laws of 1893, ch. 717), but steam surface railroads were expressly excepted from its operation. In 1895, however, the act of 1890 was amended so as to provide, among other things, as follows:
"Every person or corporation operating a steam surface railroad shall on or before the twentieth of each month pay the employees thereof the wages earned by them during the *Page 116 
preceding calendar month, unless any such employee shall be absent from his regular place of labor at the usual time of payment, in which case payment shall be made at any reasonable time thereafter upon demand." (Laws of 1895, ch. 791, section 1.)
The monthly payment system thus prescribed for steam surface railroads continued down to the time of the enactment of the provision of the Labor Law which is now assailed providing that the wages of the employees of such corporations shall be paid semi-monthly. The term employee as used in the Labor Law is defined by the statute itself to mean "a mechanic, workingman or laborer who works for another for hire" (section 2); and a question is raised as to whether this definition is broad enough to include conductors, trainmen or locomotive engineers. It is alleged by the appellant and conceded by the respondent that it will cost the railroad company $5,000 a month more to pay its employees semi-monthly than it does to pay them monthly.
In the briefs of counsel the constitutionality of the semi-monthly cash payment law (which term I use for convenience in referring to the provisions of the statute prescribing the time of payment and requiring it to be in cash) is discussed in two aspects: (1) As an exercise of the police power of the legislature, and (2) as an exercise of the reserved power to amend the charters of corporations. In the view which I have taken of the case I shall proceed to consider only the question of its validity as warranted by the reserved power to amend.
It is true as has already been pointed out that the statutory requirement of semi-monthly payments applies to every person as well as to every corporation operating a steam surface railroad, thereby referring no doubt to the operation of short branch lines by individuals or partnerships in connection with the great railroads of the state, for convenience in sending freight to and from the premises of extensive manufacturing concerns. Such branch lines are only incidental to the general railroad business of the state and the number of employees thereon must be comparatively few. The constitutionality of *Page 117 
the statute is not questioned here by any individuals operating lines of this character, and even if the enactment should be deemed unconstitutional so far as persons are concerned the provisions relating to them is readily separable from the rest of the statute relating to corporations and its invalidity in this respect, if so adjudged, need not affect the application of the provision to steam surface railroad corporations. (BereaCollege v. Kentucky, 211 U.S. 45.) It matters not that both provisions are contained in the same section. (Loeb v.Columbia Township Trustees, 179 U.S. 472, 490.)
In exercising the reserved power to amend corporate charters the legislature may not deprive a corporation of property already acquired or the proceeds of lawful contracts previously made or destroy or substantially impair the purposes of the grant or rights which are vested in the corporation thereunder; but it may make any alteration or amendment of a charter "which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right." (Close v. Glenwood Cemetery, 107 U.S. 466, 476.) In the case of corporations such as railroad companies which are clothed to some extent with a public trust and are under an obligation to discharge duties which affect the community at large the legislature may make amendments in furtherance of the public interest for the benefit of their employees even though such amendments operate as limitations upon the exercise of the right to contract. Such is substantially the doctrine enunciated in the case of St: Louis, Iron Mountain St. Paul Ry. Co. v. Paul
(173 U.S. 404), where the Supreme Court of the United States was called upon to pass on the constitutional validity of an act of the Arkansas legislature which required railroad companies whenever they discharged an employee to pay him his unpaid wages then earned at the contract rate without abatement or deduction on the day of his discharge. The state court upheld this legislation as a valid exercise of the power to amend corporate charters *Page 118 
reserved to the legislature in the State Constitution. It was contended in the Supreme Court of the United States that as to railroad corporations organized prior to its passage the statute was void because in violation of the fourteenth amendment; or, in other words, because it amounted to a deprivation of property forbidden by the Federal Constitution. The court, however, declined to sustain this view, but affirmed the judgment of the Supreme Court of Arkansas holding that inasmuch as the right to contract was not absolute but might be subjected to the restraints demanded by the safety and welfare of the state, the legislative power to amend corporate charters in this manner could not be disputed on the ground that its exercise was an infraction of the fourteenth amendment.
In the Sinking Fund Cases (99 U.S. 700, 720) the same court in discussing the power reserved to Congress to amend the charters of the great Pacific railroads, reviewed the earlier decisions on the general subject and held that the reservation of the power of amendment "affects the entire relation between the State and the corporation, and places under legislative control all rights, privileges and immunities derived by its charter directly from the State," citing Tomlinson v. Jessup (15 Wall. 459).
In this state the same rule has been laid down with equal emphasis. As illustrations of the extent to which the legislature might subject corporations to new restrictions or increased burdens in the exercise of its reserved power to amend corporate charters, Judge DENIO in Albany Northern R.R. Co. v. Brownell
(24 N.Y. 345) called attention to one case in which the Court of Appeals had held that the line of a plankroad might be extended and its capital increased and to another in which a banking corporation chartered under the general act of 1838 without personal liability on the part of the shareholders was so changed as to render the shareholders liable for all the debts of the company to an amount equal to the stock held by them respectively. (See Schenectady S. Plankroad Co. v.Thatcher, 11 N.Y. 102; Matter *Page 119 of Oliver Lee Co.'s Bank, 21 N.Y. 9.) "It is difficult to put precise limits upon the power of the legislature thus reserved over corporations created by it or under its authority," said Judge EARL in Mayor, etc., of N.Y. v. Twenty-third St. Ry.Co. (113 N.Y. 311, 317). * * * As it has the power utterly to deprive the corporation of its franchise to be a corporation, it may prescribe the conditions and terms upon which it may live and exercise such franchise. It may enlarge or limit its powers, and it may increase or limit its burdens." The appellant complains because the legislature has increased its burdens by the sum of $60,000 additional expenses which it must incur annually in order to pay its employees with the frequency prescribed by the statute; but the corporators must be deemed to have contemplated the possibility of any change of burden within the legislative power to make when they organized the railroad company.
In New York a special charter may be amended by a general act which does not refer specifically to such charter. (PrattInstitute v. City of New York, 183 N.Y. 151; People ex rel.Cooper Union v. Gass, 190 N.Y. 323.) The case of State v.Haun (61 Kans. 146) is cited as authority against this method of amendment, but it is in opposition to the view repeatedly asserted and assumed in this court, and is also opposed to decisions on the subject in other jurisdictions, where it is held that the fact that an act of the legislature is general in its terms and makes no direct or express reference to the charter of any particular corporation does not prevent it from operating as an amendment to the charter of any corporation comprehended in the classes to which it refers. Such was the effect given by the Supreme Court of the United States to a general statute of Kentucky which was construed as operative to amend the charter of Berea College, although it was not in terms designated as an amendment thereof. (Berea College v. Kentucky, supra.)
In Massachusetts a general statute relative to railroad crossings was held to operate as an amendment to the act incorporating the Boston and Providence Railroad Corporation, *Page 120 
under the reserved power of the legislature to alter or amend corporate charters. (City of Roxbury v. Boston ProvidenceRailroad Corporation, 6 Cush. 424.) Similarly it has been held in Maine that an act, general in its terms and applicable to all railroads, affects the charter of any railroad company which contains no express limitation to the contrary and may be passed in the exercise of the legislative power to modify all charters of corporations. (Bangor, Oldtown Milford R.R. Co. v.Smith, 47 Me. 34.)
The semi-monthly payment clause of the Labor Law being applicable to all steam surface railroad corporations in the state operated as a repeal of all the charters of such corporations, if there were any, which provided for a different time of payment for employees and as an amendment or addition to all charters in which no time of payment was prescribed. That the legislature by enactments designed to operate prospectively, and not interfering with vested rights, may thus regulate contracts between corporations and their employees in regard to the times when their wages shall be paid, has been expressly held in Massachusetts and Vermont. Statutes requiring corporations to pay their employees in lawful money have been sustained as falling within the reserved power to amend charters in Vermont and Maryland and by the Supreme Court of the United States as falling within the police power in a case which arose in Tennessee. (Knoxville Iron Co. v. Harbison, 183 U.S. 13.)
In 1895, under a provision of the Constitution of Massachusetts permitting such procedure, the justices of the Supreme Judicial Court of that state were requested to give their opinion to the house of representatives upon the question whether it was within the constitutional power of the legislature to extend the application of an existing law relative to the weekly payment of wages by corporations to private individuals and partnerships as provided in a bill then pending before the legislature. In response to the request the justices transmitted to the house of representatives an opinion in which their conclusion was expressed as follows: *Page 121 
"Without attempting to define the limits of the power of the General Court [the legislature] in Massachusetts to control the right of its inhabitants to make contracts generally, we cannot say that a statute requiring manufacturers to pay the wages of their employees weekly is not one which the General Court has the constitutional power to pass if it deems it expedient to do so." (Opinion of Justices, 163 Mass. 589.) This opinion was signed by all the members of the Supreme Judicial Court, including Mr. Justice OLIVER WENDELL HOLMES, now an associate justice of the Supreme Court of the United States. In reference to the conclusion reached, however, it is important to note, what the justices themselves expressly point out, that the legislative power granted to the General Court by the Constitution of Massachusetts is more comprehensive than that found in the Constitutions of some of the other states. The legislature is empowered to pass all manner of wholesome and reasonable laws "so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same." The judges further say that the considerations which may cause the legislature to determine what legislation is required by good public policy as thus defined are not for the court to weigh except so far as may be necessary to determine whether the legislation proposed is repugnant or contrary to the Constitution.
The Weekly Payment Act of Vermont (1906) provides that a mining, quarrying, manufacturing, mercantile, telegraph, telephone, railroad or other transportation corporation and an incorporated express, water, electric light or power company doing business in the state shall pay each week, in lawful money, each employee engaged in the business, the wages earned by such employee to a date not more than six days prior to the date of such payment; provided that if at any time of payment an employee is absent from his regular place of labor, he shall be entitled to such payment on demand. It prohibits the payment of the employees of any such corporation *Page 122 
in scrip, vouchers, due-bills or store orders, except in the case of a co-operative corporation in which the employee is a stockholder; and it provides that no corporation shall requirean agreement from an employee to accept wages at any other periodas a condition of employment. (Lawrence v. Rutland R.R. Co.,80 Vt. 370.)
In the case cited, while the reserved power of amendment was most strongly asserted, it was said to be, like the police power, limited by the requirements of the public good. (Page 383.) "And that the Act is within the scope of that power cannot be doubted, for its requirement, especially as far as it relates to the defendant and to the class to which it belongs, which are clothed with a public trust, and discharge duties of public concern, affecting the community at large, — is promotive of the public good in protecting their employees to the limited extent it does."
In the same case it is held that the medium of payment is as much within the scope of the reserved power of amendment as the time of payment. The opinion deals so fully and admirably with every substantial question involved in the present appeal that it is difficult to add anything of value to the argument of Chief Justice ROWELL in support of legislation of this character.
An act of the Maryland legislature passed in 1880 provided that every corporation engaged in mining or manufacturing or operating a railroad in Allegany county and employing ten hands or more, should pay its employees the full amount of their wages in legal tender money of the United States. The Union Mining Company, a corporation within the purview of the act, was the defendant in a suit brought to test its constitutionality. It was conceded that the legislature when it incorporated the Union Mining Company reserved the right to alter or amend its charter at pleasure. Hence, said the Maryland Court of Appeals, there could be no doubt "that the legislature could enact a law prohibiting the corporation from paying its employees otherwise than in money, and that it could forbid the corporation from making contracts with them for payment *Page 123 
in anything but money." (Shaffer Munn v. Union Mining Co.,55 Md. 74.)
The discussion thus far has related to the contention of the appellant that the enactments in question deprive the parties of liberty and property without due process of law. The objection that they operate as a denial of the equal protection of the laws is equally untenable. A classification of corporations with reference to their relations to the public is manifestly reasonable. No other corporations occupy precisely the same relation to the public as steam surface railroad companies, and the fact that no other corporations may have been subjected to the same requirement in respect to the payment of wages does not invalidate the requirement. As long as the classification has a basis in reason and all corporations of the same class are treated alike, the action of the legislature may not be condemned by the courts for inequality.
As to the objection that the semi-monthly payment law constitutes an unconstitutional interference with interstate commerce, it is to be observed that it is not in conflict with any legislation by Congress, nor does it affect interstate commerce directly. It relates to the wages of railway servants employed wholly within the state of New York as well as to the wages of those whose duties take them from this state into others. The subject is one upon which Congress has not undertaken to act. The cases in which state legislation has been judicially condemned for interference with the commercial power of Congress have been cases where the interference was direct. "In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution." (Sherlock v. Alling,93 U.S. 99, 103.) If its effect upon interstate commerce is only incidental a state law is not forbidden by the *Page 124 
commerce clause of the Federal Constitution, and may remain in force until and unless it is displaced by a congressional enactment dealing with the subject-matter. (Nashville, C. St.L. Railway v. Alabama, 128 U.S. 96.) "While the laws of the States must yield to Acts of Congress passed in execution of the powers conferred upon it by the Constitution, the mere grant to Congress of the power to regulate commerce with foreign nations and among the States did not, of itself and without legislation by Congress, impair the authority of the States to establish such reasonable regulations as were appropriate for the protection of the health, the lives and the safety of their people." (NewYork, New Haven Hartford R.R. Co. v. New York, 165 U.S. 628,631.) Neither did it impair the authority of the states to amend the charters of corporations partly engaged in interstate commerce so as to promote the welfare of their employees, under "the power remaining with the State to regulate the relative rights and duties of all persons and corporations within its limits." (Ibid, 632.) Until Congress shall intervene to regulate the payment of wages by interstate carriers, I think such state enactments as that under consideration are free from the objection that they constitute commercial regulations solely within the power of the Federal government to prescribe.
In reaching the conclusion that the New York statute requiring steam surface railroad corporations to pay their employees semi monthly and in cash is a valid enactment under the reserved power of the legislature to amend corporate charters, I have not overlooked the cases in which similar legislation has been condemned in other jurisdictions. I will now refer to the decisions of this character which seem most worthy of notice.
The case of Godcharles v. Wigeman (113 Pa. St. 431) involved the constitutionality of the Pennsylvania Store Order Act of 1881, which declared that all orders given by manufacturers to their workmen payable in goods or anything other than money to be void, and prohibited the use of such orders in the payment of wages by manufacturers to their employees. *Page 125 
The Supreme Court declared that this was an attempt by the legislature to do what cannot be done in this country; that is, prevent persons who are sui juris from making their own contracts. Mr. Justice GORDON said: "The act is an infringement alike of the right of the employer and the employee; more than this, it is an insulting attempt to put the laborer under a legislative tutelage, which is not only degrading to his manhood but subversive of his rights as a citizen of the United States." The case contains nothing bearing upon the exercise of the reserved power to amend corporate charters, but is simply a denial that the legislation which was the subject of criticism could be enacted in the exercise of the police power.
An act to provide for the weekly payment of wages by corporations passed by the Illinois legislature in 1891 was held to be unconstitutional in the case of Braceville Coal Co. v.People (147 Ill. 66) on the ground that it did not apply to all corporations existing within the state or to all that had been or might be organized for pecuniary profit under the general incorporation laws of the state. The Constitution of Illinois provides: "No corporation shall be created by special laws or its charter extended, changed or amended * * * but the General Assembly shall provide, by general laws, for the organization of all corporations hereafter to be created." The Supreme Court of Illinois held that this provision of the Constitution required all amendments to charters of existing corporations to be made by general laws applicable alike to all existing under the same conditions; and that inasmuch as the weekly payment law could apply to particular corporations only and not to the general body of corporations it could not be upheld.
The Revised Statutes of 1889 in Missouri made it a misdemeanor for any corporation, person or firm engaged in manufacturing or mining to issue in payment of the wages of laborers any order, check, memorandum, token or evidence of indebtedness payable otherwise than in lawful money of the United States, unless the same were negotiable and *Page 126 
redeemable at its face value in cash, goods or supplies at the option of the holder at the store or other place of business of the employer. The Supreme Court of Missouri held that this was class legislation and violative of the constitutional guaranty of due process of law. The court conceded that the legislature might regulate the business of mining and manufacturing so as to secure the health and safety of the employees but it denied that such was the scope of the enactment in question. The legislation was condemned on the ground that it denied to persons engaged in mining and manufacturing the right to make and enforce the most ordinary, every-day contracts — a right which is accorded to all other persons. "This denial of the right to contract," says the opinion, "is based upon a classification which is purely arbitrary, because the ground of the classification has no relation whatever to the natural capacity of persons to contract." (State v. Loomis, 115 Mo. 307, 315.) There was an able dissenting opinion in which it was strongly argued that statutes designed to prevent fraud or oppression in the payment of wages in mining and manufacturing enterprises are not objectionable on the ground of the selection or classification of those enterprises as subjects for separate legislation. (See page 320.)
An Indiana statute requiring all employers of labor to make weekly payment of the wages due their employees was adjudged unconstitutional as not falling within the police power inRepublic Iron Steel Co. v. State (160 Ind. 379). There, as the court said, the statute took away "from both the employer and employe, whether in the shop, in the store or on the farm, all power to contract for labor, except upon terms of weekly payment of wages in cash," and this was pronounced an unreasonable and therefore unconstitutional restriction. No question of the reserved power to amend corporate charters appears to have been considered.
Perhaps the strongest authority in favor of the appellant in any state court of last resort is Johnson v. Goodyear MiningCompany (127 Cal. 4), which invalidated a California statute requiring every corporation doing business in the state to pay *Page 127 
the wages of its employees in lawful money or checks negotiable at their face value on demand and which gave the employee a preferential lien on all the property of the corporation for the amount of his wages. It was held that such legislation could not be upheld under the reserved power to amend or on any other theory. On the other hand, the same statute had previously been adjudged to be constitutional by the Circuit Court of the United States in Skinner v. Garnett Gold Mining Co. (96 Fed. Repr., 735).
Again and again the courts of this country have asserted the proposition, in almost every form in which the English language can phrase it, that it is their duty to uphold a statute enacted by the legislature as constitutional if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law. If the lawmakers have not violated the Constitution their work must stand until they themselves destroy it, no matter what the courts may think of its wisdom or probable effect. "The courts have no right to set aside, to arrest or nullify a law passed in relation to a subject within the legislative authority on the ground that it conflicts with their notions of natural right, absolute justice or sound morality." (Slack v. Jacob, 8 W. Va. 612.) There is an irreconcilable conflict in the decisions in different jurisdictions as to the constitutional validity of labor legislation fixing the medium and time of payment of the wages of those who work for corporations. After the foregoing review of the leading cases, I find no difficulty in sustaining our New York statute on the ground which has been stated. It does not confiscate corporate property directly or indirectly. It does impose a greater future burden upon the corporations to which it relates; but that, I think, is within the power of the legislature to the extent to which it has been exercised in this case.
For the foregoing reasons I advise the affirmance of this judgment, with costs.
CULLEN, Ch. J., GRAY, WERNER, HISCOCK and CHASE, JJ., concur.
Judgment affirmed. *Page 128