## STATE v. SHELDON, ET AL.
### (No. 1055; Decided February 15, 1923; 213 Pac. 92)

RESERVED QUESTIONS—CONSTITUTIONAL LAW—MUNICIPAL CORPORA-
TIONS—CITIES AND TOWNS—CLASSIFICATION—STATUTES—UNIFORM-
ITY OF OPERATION—SPECIAL MUNICIPAL CHARTERS—GENERAL LAWS
—SPECIAL LAWS—"INHABITANT" DEFINED.

1.  Const. Article XIII, Section 1, directing the legislature to provide by general law for the organization and classification of municipal corporations other than those existing under special charters, the number of such classes not to exceed four, contemplates different laws for different classes, but a law operating uniformly upon all of one class, or upon all of several classes authorized, does not violate Article I, Section 34, nor Article III, Section 27 of the Constitution.

2.  Comp. Stats. 1920, Ch. 127, relating to the salaries, election and removal of municipal officers in cities having populations of from 6000 to 9000; Sections 1951-1952 C. S. relating to the terms and salaries of officers in towns having populations of from 3500 to 5000; Section 1743 C. S. as amended by Laws 1921, Ch. 129, and Section 1744 C. S. providing for the terms and salaries of officers in towns having populations of from 1000 to 4000 and Section 1953 C. S. relating to libraries in towns and cities having populations of more than 5000, are not general

laws, providing for the organization and classification of municipal corporations as contemplated by Article XIII, Section 1, of the Constitution.

3. Comp. Stats. 1920, Ch. 125, relating to towns having a population of not less than 150, and Ch. 126, C. S. 1920, relating to cities of the first class having populations of more than 4000, are the only general laws that have been enacted for the organization and classification of municipal corporations within the intent of Article XIII, Section 1, of the Constitution and create but two classes. These two classes and cities existing under special charters are the only classes of municipal corporations contemplated by the Constitution that have thus far been authorized.

4. Comp. Stats. Ch. 132, authorizing certain cities and towns to adopt the commission form of government, does not create a classification of cities within the intent of Article XIII, Section 1, of the Constitution.

5. Laws 1921, Ch. 139, authorizing cities and towns of more than 1000 population to adopt what is known as the commission manager form of government, is of general and uniform operation as to cities of the first class and special charter cities, judicial notice being taken that each of the latter has more than 1000 population.

6. Laws 1921, Ch. 139, providing for the appointment of a city manager in certain municipalities, is not in conflict with Article III, Section 37, of the Constitution, prohibiting the delegation of certain municipal powers to any special commissioner, the city manager mentioned in the act being a municipal officer.

7. Laws 1921, Ch. 139, providing for the appointment of a police judge in certain municipalities without making provisions for his salary or compensation, is not for that reason in violation of Article XIV, Section 1, of the state Constitution.

8. Since Laws 1921, Ch. 139, authorizing towns of more than 1000 population to adopt the commission manager form of government provided for therein, cannot operate uniformly upon towns existing under Comp. Stats. 1920, Ch. 125, the act is, as to municipal corporations of that class, in conflict with Article XIII, Section 1, of the Constitution.

9. A statute, unconstitutional as to a certain class, but constitutional as applied to other classes, may be upheld as having been intended to apply to the latter, if such in-

tention shall appear to be in harmony with the legislative purpose.

10. Laws 1921, Ch. 139, in so far as it attempts to give authority to appoint a city manager who is not a qualified elector of the state, and in so far as it delegates to the city commission or council authority to fix salaries of municipal officers is void.

11. Where the parts of a statute which are unconstitutional can be separated from the remainder and it cannot be presumed that the legislature if properly advised would not have passed the law with the unconstitutional parts eliminated, the valid parts will be upheld.

*H. Glenn Kinsley,* for petitioner.

The cause was presented in the court below upon demurrer filed to respondents answer and the trial court thereupon reserved certain important and difficult constitutional questions for the decision of this court; the first question for consideration is whether Chapter 139, Laws 1921 is in conflict with Article XIII, Sec. 1 of the State Constitution directing the legislature to provide by general laws for the organization and classification of municipal corporations not exceeding four classes, the powers of each to be defined by general laws, so that no such corporation shall have any powers, or be subject to any restrictions, other than all corporations of the same class. This question may be divided into three questions. (a) Does the act constitute local or special legislation. (b) Does it violate the requirement that the number of classes of municipalities shall not exceed four, and (c) does the act grant power to one class of municipalities, not granted to others of the same class, or discriminate as to the restrictions placed upon some, that are not applied to others. Our contention is that the act is not local or special in character, but a general law. (State v. Tausick, Mayor, Wash. 116, Pac. 651, 34 L. R. A. (N. S.) 802; Eckerson v. Des Moines, 137 Ia. 452; Cole v. Dorr, 80 Kan. 251; Bryan v. Voss, 143 Ky. 422; Attorney General v. Mankato, 41 L. R. A. 111.) As to the second question; the Constituiton provides no basis of classification, and our

legislature has adopted none except as to cities of the first and second class (Chapters 126 and 127 C. S. 1920.) Other statutes provide for terms and salaries of officers in towns of certain population. (Ch. 128, Sec. 1743, Ch. 125 C. S.) Also, there are cities existing under special charters; this court has held that the classification authorized may be four, exclusive of the charter cities. (McGarvey v. Swan, 17 Wyo. 120, 96 Pac. 697.) The commission form of government statute does not create a class: Ch. 139, Laws 1921 does not provide for a specific class, but a plan of government, that may be adopted by towns having more than one thousand population. It is clear that the act here in question does not subject municipalities to any restriction whatever, and its adoption being optional, removes all doubt as to any conflict with the Constitution. (Adams v. Beloit, 105 Wis. 363, 47 L. R. A. 441; Eckerson v. Des Moines, supra; State v. Hunter, 38 Kan. 578.) The act is quite analogous to Ch. 132 C. S. providing for commission government. The second question is whether the act conflicts with Article XIV, Sec. 1 of the Constitution in delegating power to commissions or councils, to fix salaries of officers; conceding that the city or town manager is a public officer. (22 R. C. L. 380;) we do not believe this point is meritorious; the question, however, is listed as the third reserved question and will be there discussed. The third reserved question is whether the act conflicts with Article XIV, Sec. 1 of the Constitution, in failing to provide a salary for police judge. We submit the following citations as against this point: (People v. Chicago, 202 Ill. App. 105; Bunn v. People, 45 Ill. 400; Throop on Public Officers, Sec. 8; State v. Romero, 17 New Mex. 81, 124 Pac. 649; Childs v. State, 4 Okla. Crim. Rep. 474, 33 L. R. A. (N. S.) 563; Taylor v. Board, 11 Wyo. 106.) The fourth question is whether if any portion of the act referred to is invalid the whole act is thereby rendered void. The general rule announced by this court is that if the void portion of a statute is severable from that which is valid, the latter may stand. (Taylor v.

Commissioners, supra.)   The fifth reserved question is whether the act is in conflict with Article III, Sec. 37 of the Constitution, prohibiting the legislature from delegating to commissioners, corporations or associations, power to supervise or interfere with any municipal improvements, moneys, property, etc.   The terms of the act itself constitute a complete answer to this question.   The city or town manager has no legislative power, his duty being ministerial.   (See Section 49 of the Act.)   The sixth question is whether the act is in conflict with Article III, Sec. 27 prohibiting the enactment of special or local laws?   The act is general in its operation.   All towns or cities of one thousand population may adopt it.   (State v. Hunter, 38 Kan. 578, 17 Pac. 177.)   The seventh question is whether the act in providing that a city or town manager may be a non-resident of the state is in conflict with Article IV, Sec. 3, requiring public officers to be qualified electors of the state. The act does not require the city manager to be a non-resident of the state.   It merely authorizes cities or towns to employ one who is not an inhabitant.   This does not prevent the appointment of a qualified elector to the office of city manager, so the act may be carried out without violating the Constitution.   The eighth question is whether the invalidity of any part of the act renders the whole act void. This has been covered in the argument directed to the seventh question, and we believe the question should be answered in the negative.   The ninth question is whether the act is in conflict with Article I, Sec. 34, requiring all laws of a general nature to have uniform operation.   The point is fully answered in the case of Parker v. Kansas City, 73 Kan. 722, 85 Pac. 781.   The presumption is in favor of the validity of the statute.   The demurrer to the answer of respondents should be sustained.

*R. G. Diefenderfer* and *Don L. Wakeman,* for respondents.

The act is in conflict with the Constitution, in that it creates a new classification of cities and towns; changes or

amends the charters of existing cities and towns; creates offices and prescribes the powers and duties thereof in certain cities, and delegates municipal power to a special commissioner called a manager. We concede the act to be a general law, creating a new classification of cities and towns; we also contend that it is void for the reason that at the time of its enactment there already existed four classes of municipal corporations, the full number permitted by the Constitution, (Ward v. Company, 79 Fed. 390; 85 Fed. 27; Owne v. Baer, 154 Mo. 434; 55 S. W. 644; Eckerson v. State, 137 Ia. 452; 115 N. W. 177.) The act is not of uniform operation, in that it is not complete in itself, and does not provide for a complete and uniform body of laws for commission manager cities; under this act at least four different sets of laws would be operating on the respective municipalities, it is therefore objectionable as lacking in uniformity of operation, (State v. Tausick, 116 Pac. 651; 35 L. R. A. (N. S.) 802-806-808-809; Adams v. City, 81 N. W. 869; Bryan v. Voss, 136 S. W. 884.) The following legislative provisions have established classes of municipalities. General village and town corporations, (Laws 1886 amended, Ch. 15, Laws 1895, Ch. 125, C. S. 1920:) First class, (Ch. 80. Laws 1895, C. S. 1920, Ch. 126;) Second class, (Laws 1897 Ch. 28, Laws 1901, Ch. 15; C. S. 1920, Ch. 127;) as affected by degree of population; (Laws 1899, Ch. 56; C. S. 1920, Sec. 1951-52, Laws 1905, Ch. 74, C. S. 1920, Sec. 1743-44; Laws 1921, Ch. 129; Laws 1903, Ch. 88; C. S. 1920, Sec. 1953:) Commission government; (1911, Ch. 84; C. S. 1920, Ch. 132.) The foregoing laws establish seven distinct classification, badly · intermingled and without any fixed policy or plan and it would seem that prior to the adoption of Ch. 139, Laws 1921, there were authorized in this state, three unconstitutional classifications. By the act in question, it is sought to fasten upon the state, an eighth classification. The constitutional mandate being a limitation, (State v. City,117 Minn. 458; 136 N. W. 264,) the invalidity of the act seems quite obvious. (Murnane v. City,

27 S. W. 711; 36 Cyc. 1003, Parker v. City, 85 Pac. 708; Kansas City v. State, 29 S. W. 845; St. Louis v. Dorr, 145 Mo. 466.)   Classifications must be reasonable, (19 R. C. L. 743.)   If the act is not general in its nature, and for that reason is in violation of Article III, Section 27, of the Constitution.   The delegation of power to fix salaries voids the entire act; (22 R. C. L. 380; State v. Peterson, 194, Pac. 342.)   The rule is that an entire statute will be declared invalid where constitutional and unconstitutional provisions are so connected and interdependent in subject matter, meaning and purpose, that it cannot be presumed that the legislature would have passed the one without the other; (36 Cyc. 976-978; State v. Pugh, 43 Ohio State 98, 1 N. E. 439; State v. Fox, 158 Ind. 126, 63 N. E. 19; Redell v. Moores, 55 L. R. A. 740.)   The question raised by the third reserved question is probably closed by reason of the decision in Taylor v. Board, 70 Pac. 835.   The city managership provided for by the act is undoubtedly an office; the term "inhabitant" refers to persons other than qualified electors (4 Words & Phrases, 3594; Town v. Wade, 103 U. S. 693, 26 L. Ed. 526; State v. Deshler, 25 N. J. St. 177-179.) The Constitution requires public officers to be qualified electors (Article VI, Section 3.)   The employment of supposedly trained managers from outside of the state authorized by the act was one of the inducements for its passage.   No city or town has put the act into operation, so, whatever disposition may be made of the reserved questions, will not tend to undo anything that has been done pursuant to the act.   It is the desire of respondents that the limitations of the State Constitution be recognized; we believe that the first, second, fourth, seventh and eighth reserved questions should be answered in the affirmative, or, if the first be answered in the negative that the fifth, sixth, and ninth reserved questions be answered affirmatively.

KIMBALL, Justice.

In this suit it is sought by mandamus to require the legislative body of the City of Sheridan to order an election to

vote upon the question of the adoption of the commission manager form of government. The case is here for our decision of the following reserved constitutional questions, viz:

First. Does the Act of the Wyoming Legislature, approved February 22, 1921, providing for the government of incorporated cities and towns in the state of Wyoming having a population of one thousand or more, and the adoption thereof by special election, which Act appears as Chapter 139 of the Wyoming 1921 Session Laws, contravene Section 1, Article XIII of the Wyoming Constitution?

Second. Does said Act contravene Section 1 of Article XIV of the Wyoming Constitution, in so far as it provides that the Commission or Council shall fix the salary of the City or Town Treasurer, the City or Town Clerk, Attorney, and Director of Finance, and the compensation of the City or Town Manager?

Third. Does said Act contravene Section 1 of Article XIV of the Wyoming Constitution in its failure to fix any salary or compensation for Police Judge?

Fourth. If all, or any, of those parts of said Act are unconstitutional which provide that the Commission or Council shall fix the salary of the City or Town Treasurer, the City or Town Clerk, Attorney, and Director of Finance, and the compensation of the City or Town Manager, is the whole Act thereby rendered void?

Fifth. Does said Act contravene Section 37, Article III of the Wyoming Constitution?

Sixth. Does said Act contravene Section 27, Article III of the Wyoming Constitution?

Seventh. Does said Act, in providing that the City or Town Manager need not be an inhabitant of this state, contravene Section 3, Article VI Elections?

Eighth. If that part of said Act is unconstitutional which provides that the City or Town Manager need not be an inhabitant of this state, is the whole Act thereby rendered void?

Ninth. Does said Act contravene Section 34 of Article I of the Wyoming Constitution?

By the terms of the act in question it applies only to those towns and cities having a population of 1000 or more, whether incorporated under general law or special act, which shall vote to adopt it. Other provisions of the act will be noticed as they appear pertinent to the discussion of the questions for our decision. We shall not try to follow the order of the reserved questions.

It is contended that this is a special law offensive to one or more of the sections of the State Constitution which provide as follows:

Sec. 34, Art. I. "All laws of a general nature shall have a uniform operation."

Sec. 27, Art. III. "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For * * * incorporation of cities, towns or villages; or changing or amending the charters of any cities, towns or villages; * * * creating offices or prescribing powers or duties of officers in counties, cities, townships or school districts; * * *. In all other cases where a general law can be made applicable, no special law shall be enacted."

Sec. 1, Art. XIII. "The legislature shall provide by general laws for the organization and classification of municipal corporations. The number of such classes shall not exceed four (4), and the powers of each class shall be defined by general laws, so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters or the general laws of the territory may abandon such charter and re-organize under the general laws of the state."

Section 1 of Article XIII directs the classification of municipal corporations except those existing under special charter. These latter are authorized to continue their existence as a separate class or group distinct from the four

classes for which the legislature may provide. (McGarvey v. Swan, 17 Wyo. 120, 96 Pac. 697.) The Constitution clearly contemplates the enactment of different laws for different classes of municipal corporations, and so long as a law operates uniformly upon all cities of one class or upon all of several classes, recognized or authorized by the Constitution, it does not violate either Section 34 of Article 1 or Section 27 of Article III, supra. (McGarvey v. Swan, supra; Dillon, Municipal Corp., Sec. 141 *et seq.*)

But the act in question, though it be held applicable to all cities of one or more classes, may become operative only in those cities which decide to adopt it, and there is language in some of the cited cases suggesting the inquiry whether this does not create a class within a class, or grant to those cities which adopt the act powers not possessed by other cities in the same class which do not adopt it. (Ward v. Paving Co., 79 Fed. 390; Paving Co. v. Ward, 85 Fed. 27; Owen v. Baer, 154 Mo. 434.) These cases arose under the Missouri constitution which contains a section almost identical with our Section 1 of Article XIII. But it seems that later cases have settled the construction of the Missouri constitution so far as it affects option laws of this kind. In Hall v. Sedalia, 232 Mo. 344, 353, considering an act which provided that every city of the third class, upon a vote of two-thirds of the qualified electors, should have power by ordinance to provide drains and sewers, etc., it was said:

"Certainly, the validity of the law cannot depend upon whether one or all of the cities choose to exercise the power which the act confers upon all. This act gives the same power to all the cities of the class. It does not confer one sewer system upon some of the cities and another system upon others; but all the cities have the same power to adopt the same sewer system. The possession of the power does not depend upon its exercise; it depends upon the general law, which is in force equally upon all cities of the class, whether or not it is invoked."

· .And in Barnes· v. Kirksville, 266 Mo. 270, 281, considering the constitutionality of the commission form of government act, the court said:

"As to the objection that the act creates a fifth class of cities, the answer is, that the bill does not alter the pre-existing classification of the city of Kirksville as one of the third class, but leaves it, and all other cities which shall adopt its provisions, in the same class to which they theretofore belonged."

The constitution of Kentucky also contains a provision that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. In Bryan v. Voss, 143 Ky. 422, 425, passing upon the commission form of government act, a similar contention was disposed of as follows:

"It is insisted that some of the cities of the second class may adopt the commission form of government while others do not, and that thus there will not be a uniform law governing cities of the second class. But this argument overlooks the fact that each city of the second class is now governed by the act of 1894, and that each of them has the power to adopt the commission form of government under the act of 1910. They all are governed by the same law; they each have precisely the same powers; one may exercise the power and another may not, but the mere failure to exercise the power does not affect its existence. The Constitution does not require absolute uniformity in all cities of a given class; to illustrate, each city of the second class may pass ordinances on certain subjects, one may pass one ordinance, another, others. The ordinances although relating to the same subject, may be very different, and so in the government of the cities of a given class, the legislature by the acts now in force has given the cities numerous options, which one has exercised and another has not. The act is not special legislation, for it is applicable to all cities of the second class."

We are convinced of the soundness of these views, and that they apply to the case in hand. They are confirmed

by authorities from other states where, however, the constitutional provisions are not so similar to ours. (Adams v. Beloit, 105 Wis. 363; State ex rel Hunt v. Tausick, 64 Wash. 69, 116 Pac. 651; People v. Hoffman, 116 Ill. 587, 56 Am. Rep. 793; Datz v. Cleveland, 52 N. J. L. 188, 19 Atl. 17, 20 Atl. 317.)

We are therefore persuaded that if the act in question confers upon all cities of one or more authorized classes the right to adopt it, it is not objectionable for any of the reasons heretofore noticed.

To determine whether the act operates uniformly on one or more authorized classes, we must first inquire how many such classes there are. Disregarding for a moment cities existing under special charters, it is clear, as said in McGarvey v. Swan, supra, that there are at least two classes provided for by general laws pursuant to Section 1 of Article XIII. These are towns, having a population of not less than 150, created and existing under Chapter 125, Wyo. C. S. 1920, and cities of the first class, having a population of more than 4000, created and existing under Chapter 126. It is suggested that there are many more. Our attention is called to Chapter 127, Wyo. C. S. 1920, providing for the salaries, election and removal of officers in cities between 6000 and 9000 population, whether incorporated under general law or special act, which are declared for the purposes of the chapter to be cities of the second class; to Sections 1951 and 1952 providing for terms of office and salaries of officers in towns of 3500 to 5000 population; to Section 1743 (amended by Ch. 129, S. L. 1921) and Section 1744 providing for terms of office and salaries of officers in towns of 1000 to 4000 population; to Section 1953 providing for the maintenance of libraries by towns and cities having a population of more than 5000; and it is claimed that each of these acts creates a class of cities or towns. We think none of them can be considered a general law as contemplated by Section 1 of Article XIII for the organization and classification of such corporations. It is

plain that each of such acts contemplates that each of the towns or cities affected shall continue to be governed by the general law or special charter under which it theretofore existed. Whether those acts undertake to grant powers or impose restrictions so that some corporations shall have powers or be subject to restrictions other than all corporations of the same class, contrary to the constitutional restriction in that respect, we have no occasion now to decide. (See: People v. Earl, 42 Colo. 238, 94 Pac. 294; Paving Co. v. Ward, 85 Fed. 27, 33; Ex Parte Handler, 176 Mo. 383.) This much, at least, we think is clear; that the only general laws that have been enacted for the organization and classification of municipal corporations, within the intent of this section of the Constitution, are Chapters 125 and 126, and that towns existing under the former chapter, cities under the latter, and cities under special charter, are the only classes of municipal corporations contemplated by the Constitution that have thus far been authorized.

It is also contended that those cities which have adopted the commission form of government (Ch. 132, Wyo. C. S. 1920) form another class, but the same reasons that induce us to hold that the challenged commission manager act does not make a classification of cities, causes us to believe that the commission form of government law does not do so.

We take judicial notice that all cities under special charters have more than 1000 population. The questioned act, then, by its terms includes all cities under special charters and all cities of the first class, and as to both those classes the act is general and of uniform operation. However, if it be undertaken to apply it to towns existing under the provisions of Chapter 125, supra, it would not operate uniformly throughout that class, but only upon those towns of more than 1000 population to which we think it would grant powers not had by other towns of less population in the same class, and this would be contrary to the provisions of Section 1 of Article XIII. But, even though that be true, should the whole act therefore be declared unconstitutional,

or may it not be sustained and enforced as to those classes of cities to which it can be applied without conflict with the Constitution? A statute unconstitutional as to a certain class, but constitutional as applied to other classes, may be held to have been intended to apply to the latter if that appear to be in harmony with the purpose of the legislature. This principle has been invoked in a great variety of cases, to a few only of which we shall take occasion to refer.

Statutes intended to affect both corporations and natural persons, though held or assumed to be invalid as to the latter, have been held valid as to the former. (Leep v. St. Louis, I. M. & S. R. Co., 58 Ark. 407, 25 S. W. 75; New York C. & H. R. R. Co. v. Williams, 199 N. Y. 108, 92 N. E. 404; Berea College v. Kentucky, 211 U. S. 45.)

A statute of New York authorizing service of summons upon foreign corporations was held valid in so far as it applied to such corporations doing business in the state, though unconstitutional as to those not doing business in the state. (Robert Dollar Co. v. Canadian Car & Foundry Co. (N. Y.) 115 N. E. 711.)

Acts affecting children of diverse conditions have been held applicable to some classes, and assumed or held to be invalid as to others. (Scott v. Flowers, 61 Nebr. 620; Milwaukee Industrial School v. Supervisors, 40 Wis. 328.)

In Illinois an act authorizing various custodians of public funds to retain a part of the interest derived therefrom was held invalid as to some custodians and funds, but valid as to others. (Chicago v. Wolf, 221 Ill. 130.)

Other cases illustrating the same principle are Henderson v. State, 137 Ind. 552, 36 N. E. 257; Rockdale v. Cureton (Tex.) 229 S. W. 852; State v. Martin, 87 Kans. 817, 126 Pac. 1080; Supervisors v. Stanley, 105 U. S. 305.

We are of opinion that the inclusion in the act of the provision making it apply to towns of more than 1000 population was not such an inducement to its enactment that we should say that the legislature would not have passed it without that provision. We can foresee no difficulty in en-

forcing the act as to those cities to which it may constitutionally apply. In these circumstances it seems our duty under the foregoing authorities to hold the act constitutional as applicable to all cities of the first class, which includes the City of Sheridan, and to all those under special charter.

Section 37 of Article III of the Constitution reads as follows:

"The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvement, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal function whatever."

The contention that the act is violative of this provision is not argued at much length, and no authorities are cited. We deem it is sufficient for the opinion, in disposing of this contention, to say that we think the city manager, who is conceded to be a municipal officer, cannot be considered a special commissioner to whom are granted powers prohibited by this section of the Constitution.

Section 3 of Article VI of the Constitution provides:

"No person except a qualified elector shall be elected or appointed to any civil or military office in the state."

By the act in question it is provided that the city manager "need not, when appointed, be an inhabitant of the municipality or of this state." It is conceded in argument that the office of city manager is an "office" within the meaning of this section of the Constitution, and we agree that this is so. The distinction between an office and an employment is not always clear, but without engaging in an unnecessary discussion of the nature of this office, as defined by the act, we may say that it seems clear that the legislature intended to create an "office," within the approved definitions, many of which will be found stated in McCormick v. Pratt, 8 Utah 294, 30 Pac. 1091, 17 L. R. A. 243.

It is suggested that the word "inhabitant," as used in the act, is not synonymous with the word "elector," used in the Constitution, and this, no doubt, is true, although, sometimes, where the right to vote is concerned, "inhabitant" may mean "elector." (Walnut v. Wade, 103 U. S. 683, 693; State v. Deshler, 25 N. J. L. 177, 179.) In this case counsel admit that the legislature intended to authorize the appointment of city managers who, at the time of their appointment, were not qualified electors of the state. Notwithstanding this admission it might be our duty to construe the act so as to make it conform to the Constitution by holding that the quoted clause was intended to authorize the appointment only of those persons who are not "inhabitants" within the limited meaning of that word, but who are nevertheless "qualified electors" of the state, but we think it proper to dispose of this contention on another ground which will accomplish the same result.

In so far as the act authorizes the appointment to this office of persons who are not qualified electors of the state it is clearly void, but for even better reasons than those advanced in connection with the point previously discussed we should not hold that the whole act is thereby invalidated. This precise point has been ruled in Arkansas in McClendon v. Board of Health, 216 S. W. 289. Other cases to the same effect are State v. Ray, 153 Ind. 334; State v. Wright, 251 Mo. 325; State v. Clausen, (Wash.) 182 Pac. 610.

Section 1 of Article XIV of the Constitution provides:

"All state, city, county, town and school officers, (excepting justices of the peace and constables in precincts having less than fifteen hundred population, and excepting court commissioners, boards of arbitration and notaries public) shall be paid fixed and definite salaries. The legislature shall, from time to time fix the amount of such salaries as are not already fixed by this Constitution, which shall in all cases be in proportion to the value of the service rendered and the duty performed."

The act in question provides for a police judge, but neither fixes his salary nor makes any provision for it to be fixed. We see in this omission no violation of the constitutional provision. The creation of an office without a salary is not prohibited, and it may be that the legislature intended that the police judge, like some other officers known to our laws, should serve without compensation. (Taylor v. Commissioners, 11 Wyo. 106, 70 Pac. 107.)

A more serious question arises with respect to some other officers under the act. It is provided that the commission or council shall fix the salaries of the city or town clerk, attorney, director of finance and treasurer, and the "compensation" of the city manager. Assuming that these are "officers" within the meaning of that word as used in this section of the Constitution, this attempted delegation by the legislature of a constitutional duty, without any maximum limit of the amounts of the salaries or compensation that may be fixed, cannot be justified, and that much of the act is void. But here, again, arises the question whether the whole act should be held thereby to be invalidated.

In considering an act which delegated to the governor authority to fix the salary of an officer known as counsel to the governor, it was said in Childs v. State, 4 Okla. Crim. 474, 113 Pac. 543:

"Assuming that the power to fix the salary of an office cannot be delegated to the Governor, and that this provision is therefore void, yet it does not follow that the whole section is void or that the office was not in fact created. Salary is merely incident to an office, and constitutes no part of the office; the office may exist without provision for compensation of any kind or character. Compensation is not indispensable to an office. (Throop on Public Officers, Section 8; Mechem on Public Officers, Sec. 7; State v. Stanley, 66, N. C. 66, 8 Am. Rep. 488; Howerton v. Tate, 68 N. C. 547; State v. Kennon, 7 Ohio St. 546; U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830.''

It is apparent as a practical matter that a law creating offices which require the more or less constant personal attention of the officers who fill them, without any provision for salaries or other compensation, could not long continue in effective operation. But we think we should not presume that this condition will be permitted to continue in the case at hand. The failure of the legislature to make a proper provision for these salaries may be regarded as an oversight growing out of a mistake as to its right to delegate the authority. This omission may be cured by amendment, and it would seem that the salaries may be fixed even after the offices have been filled. (Mechem on Public Officers, Sec. 858.)

To summarize with some repetition we hold the act in question void in so far as it applies to towns organized and existing under Chapter 125, Wyo. C. S. 1920; in so far as it attempts to give authority to appoint a city manager who is not a qualified elector of the state, and in so far as it delegates to the city commission or council authority to fix salaries of municipal officers. As we think the parts of the statute which are unconstitutional can be separated from the remainder, and that we cannot presume that the legislature, if properly advised, would not have passed the law with the unconstitutional parts eliminated, we hold that the remaining parts of the act are not void for any reason called to our attention by the reserved questions. Claiming that the court should not thus decide that parts of the act are valid, counsel for respondent relies upon the rule stated in State v. Peterson, 27 Wyo. 185, 212, 194 Pac. 342, 350, that the law must be tested, not by what has been or can be done under it, but by what the law authorizes to be done under its provisions. We do not question this rule as applied in that case and in Sterret v. Young, 14 Wyo. 146, 82 Pac. 946, but we see nothing in the rule to affect the duty of a court in proper cases, in accordance with the principles hereinbefore discussed, to uphold those parts of a law which do not authorize unconstitutional acts.

There are a few incidental points raised in the briefs which we do not think require specific notice in this opinion. We have given careful consideration to all of them, and think they afford no reason for a different view upon any of the questions submitted for our decision.

To reserved questions 1, 6 and 9 we answer that the act in question in so far as it affects Sheridan, a city of the first class, does not contravene the section of Wyoming Constitution mentioned in the question. To question 2 and 7 we answer "yes," and to questions 3, 4, 5 and 8 we answer "no."

POTTER, Ch. J., and BLUME, J., concur.