(September 11, 1900.)

## WILSON v. BARTLETT.
[62 Pac. 416.]

REMOVAL OF COUNTY SEAT—PETITION.—A qualified elector to sign a petition for the removal of a county seat under the provisions of section 2, article 18 of the constitution, is one who possesses all of the qualifications enumerated in section 2, article 6 of the constitution.

QUALIFIED ELECTOR—REGISTRATION.—By the provisions of said section 2, article 6, registration is not one of the substantive qualifications of an elector. Registration is simply a regulation of the right of suffrage and is *prima facie* evidence of the right to vote. The term "elector" and "qualified elector" are used interchangeably in the constitution and laws of the state. The authority to fix the rule by which a majority of the qualified electors may be ascertained is with the legislature.

ABBREVIATION.—The word "ditto" and its contractions have a well-defined meaning.

AFFIDAVIT OF CONTEST.—The affidavit of a contestant in a county seat removal case must show that the list of names that he desires to contest, if stricken from the petition, would reduce the number of names on the petition to less than the number required by law to be on such petition. If it does not, the trial court ought to deny the contest and may strike the affidavit from its files.

PRIMA FACIE CASE.—When a petition is presented to the court for the removal of a county seat, and all of the signers to such petition state, over their signatures, that they are qualified electors of such county, a *prima facie* case is made, and no further evidence of the qualification of such signers is required, unless a contestant appears and files a proper affidavit of contest as required by law.

(Syllabus by the court.)

APPEAL from District Court, Fremont County.

Caleb Jones and Richards & Varian, for Appellant.

The constitution forbids the removal of a county seat except upon petition of a majority of the qualified electors of the county, and requires a two-thirds vote of the qualified electors to carry the election therefor. For such elections the qualifications of voters as to residence is extended to ninety days. (Const., art. 18, sec. 2.) The statute requires the petition for removal to be signed by legal voters, and the signers must be legal voters at general elections. Of course, the legislature could not have intended to annul any provisions of the constitution, and the term "legal voter," as used in the statute, must mean "qualified elector," as used in the constitution. The language of the constitution is clear and explicit. It is: "Except as in this article otherwise provided, every citizen of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he offers to vote thirty days, next preceding the day of election, if registered as provided by law, is a qualified elector." (As amended, art. 6, sec. 2; *Bew v. State,* 71 Miss. 1, 13 South. 868; *Mew v. Railway Co.,* 55 S. C. 90, 32 S. E. 828; *Bourland v. Hildreth,* 26 Cal. 180; Potter's Dwarris' Statutes, ed. 1885, p. 143.) The court erred in refusing to receive or consider the withdrawal in writing, offered by one hundred and forty-eight of the signers upon the original petition, and in refusing to strike from the petition the names of such persons. (*State v. Eggleston,* 34 Kan. 714, 10 Pac. 3; *Slingerland v. Norton,* 59 Minn. 351, 61 N. W. 322; *State v. Nemaha County,* 10 Neb. 32, 4 N. W. 373; *State v. Polk County,* 88

Wis. 355, 60 N. W. 266; *LaLondi v. Barron County,* 80 Wis. 380, 49 N. W. 960.)

Dietrich, Chalmers & Stevens, for Respondents.

What is the purpose of registration? Clearly, not "once registered always registered." Registration is not indeterminate in the period of its effectual existence. A registration is for one particular purpose—namely, to furnish *prima facie* evidence of the individual's qualifications to vote at a certain fixed ensuing election, and it is only *prima facie* evidence. (Idaho Election Law, Laws 1899, p. 41, sec. 35; McCrary on Elections, sec. 275; *Preston v. Culbertson,* 58 Cal. 208.) An election to determine the question of the removal of a county seat is not a state, county, city or town election within the meaning of the registry law. (Paine on Elections, secs. 305, 357; *Boren v. Smith,* 47 Ill. 485; *People v. Supervisors,* 51 Ill. 191; *Supervisors v. Davis,* 63 Ill. 405.) "Qualified elector" means a person who is legally qualified to vote, while a "legal voter" means a qualified elector who does in fact vote. (Black's Law Dictionary, 973, citing *Sanford v. Prentice,* 28 Wis. 358.)

SULLIVAN, J.—This is an appeal from a decision of the district court of Fremont county—from an order or judgment submitting to the legal voters of said county the question whether the county seat of said county should be removed from St. Anthony to Rexburg. It appears from the record: That a petition for the removal of said county seat, containing two thousand three hundred and forty-two signatures, was duly filed in the office of the clerk of said district court in and for said county, as provided by section 106 of an act of the legislature providing for the holding of general and special elections, etc. (See Laws 1899, p. 33.) That, under the provisions of section 109 of said act, Charles. P. Bartlett filed his affidavit of contest, contesting the right of certain signers of said petition to sign the same, and based his right of contest on the two following grounds, to wit: "1. That all those persons whose names appear on said list from page 1 to page 23, inclusive, were not at the time of signing

said petition, nor never have been, registered as is required by law. 2. That each and all of the names appearing on pages 24 to 26, inclusive, of said list, are the names of persons who did not write or cause to be written opposite their said names the name of the precinct in which they then resided, as is required by law." The transcript shows that the first specification of said affidavit contained 888 names, and the second contained 139 names. A motion was made by counsel for the petitioners, who are respondents here, to strike said affidavit from the files for the following reasons, to wit: "1. That the matters in said writing, protest, or remonstrance upon which the same appears to be based are ecah and all redundant, irrelevant, frivolous, and the same contains no legal objection, or ground of objection whatever, to said petition for removal, or the form or substance thereof, or to the qualification or sufficiency of the signers thereof; that the said so-called written protest or remonstrance was not filed with the clerk of said court, or any court, within the time allowed by law." Thereafter said motion was heard by the court, and denied in so far as the same was made upon the ground that the affidavit of contest was not filed in time; and it sustained said motion upon the ground that the matters set up in the affidavit were insufficient in law to authorize the court to strike out the names of the petitioners referred to in said affidavit and list filed therewith, and thereupon it was ordered that said affidavit and list be stricken from the files. Thereupon counsel for contestant presented and asked leave to file the written request made and signed by one hundred and forty-eight persons who had signed said petition to withdraw their names from said petition. Counsel for the petitioners objected to the receipt and filing of said withdrawals on the ground that they were not made in time, and that it was incompetent, irrelevant, and immaterial for such persons to withdraw their names from said petition; and the court sustained the objection, and refused to permit such withdrawals to be filed. Thereupon the contestant, through his counsel, moved the court for leave to appear by counsel in opposition to the proofs to be offered in support of the petition, and to cross-examine witnesses sworn

in support thereof. Under the objection of counsel for the petitioners, the court denied said motion. After hearing certain testimony, the court made its finding of facts and conclusions of law, and judgment was entered authorizing the election prayed for in said petition. Among other facts, the court found that at the last general election held in said county the greatest number of votes cast for any officer (state or county) were cast for sheriff, and that the total number of votes cast for sheriff at that election was two thousand five hundred and eighty, and that a majority of that number was one thousand two ninety-one, and that, owing to the great distance necessary to be traveled, and long time to be consumed, in procuring the attendance of witnesses, no proof was offered or taken as to the qualification of the signers, or the genuineness of the ·signatures, upon the petition of those signing it from six precincts in said county, and containing six hundred and thirty-six names. And the court made no finding as to said names, as it concluded it was unnecessary to make any finding thereon, for. the reason that after deducting said six hundred and thirty-six names from the total number of names on said petition, and also deducting therefrom thirty names that the court found were not properly on said petition, the petition contained one· thousand six hundred and seventy-three names, or three hundred and eighty-two signatures more than a majority of the votes cast for sheriff in 1898, at the last general election.

Five errors are assigned. The first is that the court erred in striking appellant's affidavit and list of names contested from the files. The affidavit and list specify that eight hundred and eighty-eight of the signers of said petition were not qualified to sign the same, for the reason that they were not registered as required by law. It is contended by counsel for appellant that under the provisions of section 2, article 6, of the constitution, a person is not a qualified elector and qualified to sign such petition, unless he is first registered. Said section is as follows: "Except as in this article otherwise provided, every male citizen of the United States, twenty-one years old, who has actually resided in the state or territory for six months and in the county where he offers to vote, thirty days next preceding the

day of election, if registered as provided by law, is a qualified elector; and until otherwise provided by the legislature, women who have the qualifications prescribed in this article, may continue to hold such school offices, and vote at such school elections, as provided by the laws of Idaho territory." We cannot agree with the contention of counsel for appellant. We do not think that registration is a substantive qualification of an elector in this state, although said section of the constitution declares that persons having certain qualifications, and, in addition to those, if they be registered, they are qualified electors. We do not think that registration is intended as one of the substantive qualifications of an elector. Registration was intended only as a regulation of the exercise of the right of suffrage, and not a qualification for such right. Section 35 of the election laws of 1899 provides that registration is *prima facie* evidence of the right to vote. Section 34 of that act provides, among other things, that the registrar shall register only qualified electors. If registration is one of the qualifications of an elector, the registrar is prohibited from registering any person who has not theretofore been registered; and, after a most careful examination of the several provisions of the constitution in which the terms "elector" and "qualified elector" are used, we conclude that said terms are used interchangeably, and that an elector is a qualified elector.

Section 2 of article 18 of the constitution provides that no county seat shall be removed unless upon a petition of a majority of the qualified electors of the county, and unless two-thirds of the qualified electors of the county voting on the proposition at a general election shall vote in favor of such removal. The framers of the constitution did not undertake to prescribe a rule by which a majority of the qualified electors should be ascertained, but left that rule to be established by the legislature; and by section 106 of the act providing for elections the legislature has declared that a petition for the removal of a county seat must contain the names of legal voters at general elections equal in number to a majority of all votes cast at the last general election in such county. Some might think that a better rule could be established for finding the number that

must sign the petition, but it is sufficient to say that the legislature has established a reasonable rule, which it had a right to do. Under the laws of this state, the registration of voters is for only a single election. An elector must register every two years. By the provisions of section 35 of our election laws of 1899 (page 41), the clerk is required to preserve the registration list for only one year. So under that law such lists are not required to be preserved, as a public record or otherwise, for any purpose whatever, beyond one year, and all electors are required to register every two years if they desire to vote. We think from a consideration of all the sections of the constitution bearing upon the question of electors, and provisions of our law referring to the same subject, that it was not the intention to require a signer of a petition for the removal of a county seat to be a registered voter. Therefore, the specification in said affidavit that eight hundred and eighty-eight of the signers of said petition were not qualified to sign the same, because they were not registered electors, was not a valid objection, and was properly stricken out by the court. And the further specification in said affidavit that one hundred and thirty-nine of the persons who signed the petition had not written opposite their names the name of the precinct in which they resided was properly denied by the court. It appears that a person signed his name to said petition, and the name of the precinct in which he lived was written opposite his name. Subsequent signers of said petition simply made the ditto mark, indicating thereby that they resided in the same precinct as the first signer. While it might be better for each signer to write in full the name of the precinct in which he resides, yet we think the ditto mark, which has a meaning well understood by all of the people, was sufficient in this case.

The affidavit of the contestant must show that the list of names that he desires to contest, if stricken from the petition, would reduce the number of names on the petition to less than the number required by law; and, if it does not do that, the trial court ought to deny his contest. In the case at bar the court found that there were two thousand three hundred and thirty-nine names on the petition. The contestant raised ob-

jection by his specifications to only one thousand and twenty-seven of those names. Deducting said last number from the total number of names on said petition, there would still have remained on said petition one thousand three hundred and twelve names—twenty-two more than the law actually required, conceding that registration is a necessary qualification of a signer of such petition. The court in its findings, did not pass upon six hundred and thirty-six names on the petition, giving his reason therefor. When a petition is presented to a court for the removal of a county seat, and all of the signers to said petition state, over their signatures, that they are qualified electors of such county, the petitioners make a *prima facie* case, and no further evidence of the qualifications of such signers is required, unless a contestant appears as provided by law, and enters his contest, That being true, the court would have been justified in finding, without further proof, that all of the signers to said petition were qualified electors, as no valid contest was entered against any of the names upon said petition, for the reason that the specifications in said contestant's affidavit raised no valid objections to the qualifications of any of the signers of said petition. The court did not err in striking said affidavit and list from the files.

We have considered the other errors assigned by counsel for appellant, and find no errors in the rulings complained of. The judgment of the court must be affirmed, and it is so ordered, with costs of this appeal in favor of respondents.

Huston, C. J., concurs.

QUARLES, J.—I am unable to concur in the various conclusions reached by my learned associates in this case. In my opinion, the rule enunciated—that it is sufficient if the petition for removal be signed by persons who claimed to be "qualified electors" of the county, equal in number to a majority of the votes cast at the last general election for the office receiving the highest number of votes—contravenes the provisions of our constitution. We find the following provision in section 2, article 6, of the constitution, as amended, to wit: "Except as in this article otherwise provided, every male or female citizen

of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a qualified elector." This provision must be considered in connection with section 2 of article 18 of the constitution, which is as follows: "No county seat shall be removed unless upon petition of a majority of the qualified electors of the county," etc. Considering the constitution as a whole, reading all its provisions, I am unable to agree with my associates that the phrase "qualified elector" simply means an elector, in the constitutional provisions under consideration. The rule followed by the district court, and adopted in the majority opinion, nullifies to a large extent the provisions of section 2, article 18, of the constitution. That provision requires that the petition must be signed by a majority of the qualified electors of the county. A majority at what time? At the time the petition is presented to the district court, or at the last general election? If you accept the former time, then you must ascertain the number of qualified electors in the county at that time. If the latter, the number that were in the county at the date of the last election. By the express reading of the constitution, an elector of a county is a citizen of the United States, over twenty-one years of age, who has resided in the state six months, and in the county thirty days. An elector of the county or district, who has been such elector of his county or district for the preceding year, may be elected a senator or representative, whether he has qualified as such elector by registering or not. No person is eligible to the office of district judge unless he is an elector in the judicial district for which he is elected. The constitution requires registration "as provided by law," as a necessary qualification to vote. The definition given by the constitution of a qualified elector shows that a qualified elector is one who has registered. An elector may hold an office without registering. An elector cannot vote or sign a petition for removal of a county seat unless he is a qualified elector; that is, an elector who has registered. Looking at the constitution from various standpoints, I am convinced that the framers of

the constitution intended that a petition for removal of a county seat should be signed by a majority of the electors who qualified to vote at the last preceding general election by registering. Otherwise, the phrase "qualified electors" would not have been used. This construction of the constitutional provisions under consideration makes that easy which otherwise would be impossible or impracticable. We can easily ascertain not only how many qualified electors exist in the county, but can also tell who they are, by referring to the registration lists; for those lists show who qualified as electors. This, in time, necessarily refers to the last preceding general election. If the court, in passing upon the sufficiency of the petition, was required to ascertain the number of electors in the county at the time the petition was filed or presented, so as to ascertain whether it has been signed by a majority, the court would be confronted with an impracticable, if not an impossible, task. Such difficulty is avoided by giving full force and effect to the letter, spirit, and intent of the constitution. The elector is one of certain age (over twenty-one), citizenship, and residence, while the "qualified elector" is the elector who has registered as required by law. Bear in mind that, in the language of the constitution, the petition for removal of a county seat must be signed by "a majority of the qualified electors of the county"; that there are no "qualified electors" except those who have registered. Hence it is palpable that, if the framers of the constitution intended that the petition for removal should be assented to by a majority of residents in the county who would be entitled to qualify to vote by registering at the coming election, they would not have used the phrase "qualified electors." I cannot agree that the word "qualified," in the provision under consideration, was used inadvertently, and therefore to be regarded as meaningless. But it is said that the election statute only requires the registration lists to be kept one year after the election. To this suggestion it may well be replied that the statute does not require said lists to be destroyed, that the legislature has no such power, and that said registration lists should be kept for at least two years, so that when needed, as in case of attempt to remove the county seat, or in case of a special election, they may be forthcoming.

I cannot agree that the legislature can, in the face of the provisions of the constitution cited *supra,* provide that a number of residents of the county equal to a majority of the votes cast at the last general election shall be sufficient to a petition for removal of a county seat. Such rule is in direct conflict with the express provisions of the constitution. We know from common observation and experience that all of the qualified electors of the county do not vote. Some of them register, and afterward, through indifference, sickness, business entanglements, accident, or unavoidable casualty, do not vote. Hence, to ascertain the number of qualified electors, you must go to the registration lists; for those lists show who "qualified" to vote, while the poll lists only show who voted, and not the full number who qualified. The rule that the number who voted at the last election shows the number of electors in the county at any time within two years thereafter is contrary to fact, contrary to experience, and unreasonable. Take Fremont county, for instance. It is large in area, agricultural in character, and is fast growing in population by immigration from other counties and states. We find from the election returns in the office of the Secretary of State, of which we take judicial knowledge, that the vote cast for governor at the last three general elections in Fremont county is as follows: In 1894, one thousand three hundred and sixty votes; in 1896, one thousand six hundred and thirty-one votes; and in 1898, two thousand five hundred and twenty-two votes. I mentioned this matter to show the error of holding that one who may register and vote at the forthcoming election is qualified to sign the petition for removal of a county seat, and at the same time holding that the number of such persons in the county at the time the petition is presented may be ascertained by finding the number who voted at the last election.

The trial court refused to permit one hundred and forty-eight of the signers of the petition for removal to withdraw from the petition. They presented their withdrawal in writing before the proceeding was submitted to the court, and before it was determined by the court. I think this is error. It has been held by the courts of Kansas, Minnesota, Nebraska, and Wiscon-

sin that a person who signs a petition for the removal of the county seat has an absolute right to withdraw his name and have it struck off of such petition at any time before it is finally acted upon.  (See 7 Am. & Eng. Ency. of Law, 2d ed., 1028, and notes thereto.)  The court erred in striking out the contest of the appellant, and should have heard same.  The record before us does not show how many qualified electors there were in Fremont county at the last general election, nor does it show how many electors there were in the said county at the time the same petition was filed.  The court did not find that a majority of the legal voters who voted or who registered at the last preceding election signed said petition.  Nor did the court find that a majority of the electors of the county who were entitled to register and vote, either at the time of filing the said petition, or at the forthcoming election, signed said petition. The court did not find, and there is nothing in the record to show, that said petition was signed by a majority of the qualified electors of Fremont county, as required by section 2, article 18, of the constitution.  For these reasons, I think that the decision appealed from should be reversed, and the proceeding remanded to the district court for further proceedings.