THE STATE OF WYOMING, on the Relation of ROBERT W. KEEFE, NORMAN SPEAR, ROBERT J. SMALLEY, WALTER HALLE, CHARLES H. DURNING, *Petitioners and Respondents,*

vs.

JOHN J. McINERNEY, Mayor of the City of Cheyenne, Wyoming,

*Respondent and Appellant.*

(No. 2343; June 10th, 1947; 182 Pac. (2d) 28)

282

For the Appellant, the cause was submitted upon the brief of John S. Miller and Carleton A. Lathrop, both of Cheyenne, Wyoming, and oral argument by Mr. Lathrop.

For the Petitioners and Respondents, the cause was submitted upon the brief and also oral argument of Allen A. Pearson of Cheyenne, Wyoming.

## OPINION

BLUME, Justice.

In 1923 the legislature of this State provided for the so-called manager form of government for towns and cities in this State. The provisions therefor now ap-

pear in Sections 29-701—29-921, Compiled Statutes of Wyoming, 1945. Sec. 29-702 provides as follows:

"Within five (5) days after filing with the city clerk of a city, of a petition of electors of said city equal in number to ten (10) per centum of the number of registered electors of such city, the mayor thereof shall by a proclamation to be published in at least one newspaper in said city for three (3) times, submit the question of accepting the provisions of this Act (§§ 29-701, 29-921) at a special election to be held at a time specified therein not less than thirty (30) days and not more than sixty (60) days after said petition is filed. If the provisions of this act are not accepted at such special election, the question of accepting said provisions shall not again be submitted to the voters of said city for adoption within two (2) years thereafter. The signature(s) to the petition need not all be appended to one paper, but each signer shall state his place of residence and street number. One of the signers of each paper shall make oath that each signature to the paper appended is the genuine signature of the person whose signature it purports to be."

In accordance with the foregoing provisions a petition bearing 1770 signatures was filed with the clerk of the City of Cheyenne on April 27, 1945. The petition had been circulated by a number of parties and the separate papers of the several parties were then combined and thus presented to the City Clerk. Each of the papers circulated as above mentioned was headed as follows: "To the Mayor and City Commissioners of the City of Cheyenne: We, the undersigned Electors of the City of Cheyenne, respectfully petition that the following question be submitted to the voters of this City: 'Shall the proposition to adopt the City Manager Form of Government be approved, and shall the proposition to accept the provisions of Chapter 22, Article 8, Wyoming Revised Statutes, 1931, as amended by Chapter 32, Session Laws of Wyoming, 1943, and Chapter 114, Session Laws of Wyoming, 1945, be adopted for the City of Cheyenne'?" The petitioners signed their

names, stating their place of residence and street number, as required by the statute, and an affidavit was attached to each of the papers to the effect that each signature to the paper appended is the genuine signature of the person whose signature it purports to be. The Mayor of the City refused to call the election and according to the evidence in this case he made no effort to determine as to whether or not a sufficient number of qualified electors had signed the petition. Thereupon the plaintiffs and respondents herein brought an action in mandamus to compel the mayor to call the election as above mentioned. The trial court thereupon submitted to this court certain constitutional questions. On August 3, 1945, this court handed down its mandate, refusing to answer these constitutional questions at that time for the reasons mentioned in the opinion. State ex rel. Keefe et al vs. Jones, Mayor, (Wyo.) 161 Pac. 2d 135. Thereafter the case came on for trial in the district court and a judgment was rendered directing the mayor of the City of Cheyenne to call the election as requested in the petition. From that judgment the mayor of the City has appealed. The present mayor of the City was substituted in place of the person who was the mayor at the time of the institution of this suit.

I.

It is contended by appellant that the petition was not signed by electors of said City equal in number to ten percent of the number of registered electors of such city, as required by the statute. It is agreed that the number of registered electors was 12,855; ten percent of that number is 1285. Appellant states in his brief that only 978 of the signers of the petition were in fact registered voters. That is not disputed and we shall accept that as a fact. It is the contention of the appellant that only registered electors were qualified to sign the petition. Some of the cases so hold. In re Initiative Petition No. 142, State Question No. 205, 176

Okla. 155, 55 Pac. 2d 455; Public Service Electric & Gas Co. vs. City of Camden, 13 N. J. Misc. 693, 180 Atl. 778; Ahrens vs. Kerby, 44 Ariz. 269, 337, 37 Pac. 2d 375, where the court states that it would be a herculean task to determine the number of electors if others than those registered were permitted to sign the petition. In that case an election to be held over the whole state was in question. Most of the courts, however, take the view that it is not necessary that, a petition similar to that involved in this case be signed by people who are registered, and that it is sufficient if it is signed by people otherwise qualified as electors. Hindman vs. Boyd, 42 Wash. 17, 84 Pac. 609; McComb vs. Robelen, 13 Del. Chan. 157, 116 Atl. 745; Gilbert vs. Breithaupt, 60 Nev. 162, 104 Pac. 2d 183; Pieuser vs. Sioux City, 220 Ia. 308, 262 N. W. 551, 100 A. L. R. 1298; Meffert vs. Brown, 132 Ky. 201, 116, S. W. 779, 1177; Wilson vs. Bartlett, 7 Idaho 271, 62 Pac. 416; In Re Sullivan, 307 Pa. 221, 160 Alt. 853, Johndahl vs. Buffalo, 245 N. Y. 538, 157 N. E. 849; Cassady vs. Jewell, 268 Ky. 643, 105 S. W. 2d 810, 813; City of Covington vs. Miller, 266 Ky. 198, 98 S. W. 2d 293; Cave vs. Conrad, 216 Ind. 304, 24 N. E. 2d 1010; State vs. Sullivan, 283 Mo. 546, 224 S. W. 327; Woodward vs. Barbur, 59 Ore. 70, 116 Pac. 101; Staet ex rel. vs. Olcott, 67 Ore. 214, 135 Pac. 903; In Re Herman, 108 App. Div. 335, 96 N. Y. S. 144; see annotation on the subject in 100 A. L. R. 1308. Counsel for the appellant contend that the cases taking the latter view are not in point in this case for the reason that the constitutional provisions are different from those in this State. The provisions in our constitution relating to electors are contained in Article 6 of the Constitution. Section 2 provides as follows: "Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding

any election, shall be entitled to vote at such election, except as herein otherwise provided." Section 5 provides: "No person shall be deemed a qualified elector of this state, unless such person be a citizen of the United States." Section 6 provides: "All idiots, insane persons, and persons convicted of infamous crimes, unless restored to civil rights, are excluded from the elective franchise." Section 9 provides: "No person shall have the right to vote who shall not be able to read the constitution of this state. The provisions of this section shall not apply to any person prevented by physical disability from complying with it requirements." Section 12 provides: "No person qualified to be an elector of the state of Wyoming, shall be allowed to vote at any general or special election hereafter to be holden in the state, until he or she shall have registered as a voter according to law, unless the failure to register is caused by sickness or absence, for which provisions shall be made by law. The legislature of the state shall enact such laws as will carry into effect the provisions of this section, which enactment shall be subject to amendment, but shall never be repealed; but this section shall not apply to the first election held under this constitution." In the State of Idaho the constitutional requirement as to registration is at least as strong, if not more explicit, than that in this State. It is quoted in the case of Wilson vs. Bartlett, supra, and is as follows: "Except as in this article otherwise provided, every male citizen of the United States, twenty-one years old, who has actually resided in the state or territory for six months and in the county where he offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a qualified elector." Notwithstanding this explicit provision of the constitution, it was held that a petition similar to that in the case at bar may be signed by an elector although he is not registered, the court saying: "We do

not think that registration is a substantive qualification of an elector in this state, although said section of the constitution declares that persons having certain qualifications, and, in addition to those, if they be registered, they are qualified electors. We do not think that registration is intended as one of the substantive qualifications of an elector. Registration was intended only as a regulation of the exercise of the right of suffrage, and not a qualification for such right." In Re Sullivan, supra, it appears that the constitution of Pennsylvania provides as follows: "Every male citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections, subject however to such laws requiring and regulating the registration of electors as the General Assembly may enact:" (Here follows the other requirements) The court, in holding that a petition for nomination of a candidate may be signed by an elector, though not registered, said: "We cannot agree with the contention which was earnestly advocated before us, and which was also the opinion of the court below, that registration is an essential qualification of an elector. The reference which is made to registration in the first paragraph of the section of the Constitution just quoted does not require such a narrow construction of the phrase 'qualified elector.' Registration may be and usually is prerequisite to voting; but it is not a qualification for the exercise of the franchise." The principle announced in these cases is the principle upon which the other cited cases herein are based. It would have been easy for the legislature to have provided that the petition in this case should be signed by ten percent of the registered electors. But it made no such provision. The statute itself by prescribing that *electors* of said city equal in number to ten percent of the number of *registered electors* must sign the petition, indicates that it contemplates a difference between the italicized

terms. To construe them as identical in meaning would mean to read something into the statute which is not there. We know of no constitutional provision which prohibits the legislature from permitting the signing of a petition such as that here involved by persons not yet registered but who upon registration would be permitted to vote. Section 12, Article 6, supra, upon which counsel have laid a great deal of stress, forbids that a non-registered person may vote. It does not relate to the signing of a petition like that in the case at bar, leaving the legislature unhampered to permit such petition to be signed by those who, though not registered, have the qualifications of electors in every other respect. In other words, the question before us is not a constitutional one, but one of statutory construction, and our legislature has, we think, in this case used the simple term "elector" in the sense in which it has been used in the decisions of most of the courts as already indicated, and we shall hereafter in this opinion use the term in that sense. The contention above made must accordingly be overruled.

On the oral argument counsel for appellant argued that there is no provision under our statutes under which the petitioners could have voted at a special election called by the mayor, according to the provisions of the statute, unless they were registered at the time when the petition was presented to the City Clerk. We think that counsel are mistaken. Section 31-403, Wyoming Compiled Statutes of 1945, seems to make ample provision for a situation such as was presented in this case.

II.

Counsel for appellant claim that even though the signers of the petition were not necessarily required to be registered voters, it has not been shown by competent evidence that ten percent of the qualified electors

of the City have signed the petition in question; that aside from the 978 signers, 307 additional signatures of proper electors were required, and that it has not been shown by competent evidence that that many signers in addition to the 978 appear on the petition herein. It is contended by counsel for the respondents that the petition should be held prima facie sufficient unless the contrary is shown. Some of the authorities so hold. Wilson vs. Bartlett, 7 Idaho 271, 62 Pac. 416. In Fenias vs. Reichenstein, 124 N. J. L. 196, 11 Atl. 2d 10, the court held that by reason of the refusal of the official (the clerk in that case) to make a decision within the time fixed by the statute the petition will be deemed sufficient. In Lail vs. People, 75 Colo. 459, 226 Pac. 300, it was held that the clerk with whom the petition was filed and who was to call the election was authorized merely to determine whether the petition was valid on its face, and that he had no authority to determine the qualifications of the signers. In Kaesser vs. Becker, 295 Mo. 93, 243 S. W. 346, it appears that the statute requires the person circulating a petition to attach an affidavit that the signers of the petition are legal voters. It was held that when such affidavit is attached, the truth thereof will be presumed. On the other hand a number of cases hold that in the absence of a statute to the contrary it must affirmatively appear that the petition has been signed by the requisite number of qualified electors. In Re Coaldale Borough, 16 Pa. Dist. R. 288, 290; Starin vs. Town of Genoa, 23 N. Y. 439, 450; City of Dayton, Ohio vs. City Railway Company, 16 Fed. 2d 401, 405; Sarlls vs. State ex rel. Trimble, 201 Ind. 88, 166 N. E. 270, 67 A. L. R. 718; McDonnell vs. Cohen, 252 App. Div. 277, 299 N. Y. S. 178; Ryer vs. Holland, 10 N. J. Misc. 1039, 162 Atl. 188. In the last cited case the court, ruling that it must be shown that a valid petition has been filed, said: "It is not conceivable that every paper pur-

porting to contain names imposes upon the clerk the obligation to act, but the petition must be signed by the requisite number of voters and only upon such signing is he either authorized or can he be compelled to act." We need not decide which of the foregoing views should be adopted. The respondents undertook to follow the second of these views. We may, however, say that it would seem that if the methods of proof suggested in this opinion are not unreasonable, then it will not on the one hand be a "herculean" task to determine the number of qualified electors on a petition like the one in the case at bar, and on the other hand, the danger of presentation of such petition which would contain the signatures of a lot of unqualified electors would be minimized.

Before proceeding to discuss the evidence presented herein it may be mentioned that the statute undoubtedly requires and contemplates that the signers of the petition should at least be residents of the City of Cheyenne in good faith. It is hardly probable, however, that the statute contemplates that all signers of the petition, 1770 in number in this case, should be compelled to go on the witness stand to testify to their own qualifications as signers of the petition. That would be wholly impractical, and we cannot attribute such an intention as that to the legislature. That means that resort must be had to secondary and less satisfactory evidence. There may, of course, be some difficulty in proving the qualifications of the signers in the absence of testimony by them personally and when the names do not appear on the registration books. There is a remarkable scarcity of decisions which have pointed out what evidence is competent in such case, and counsel for appellant herein have failed to enlighten us on the subject. In Re Coaldale Borough, 16 Pa. Dist. R. 288, it was held necessary to show the number of resident free holders and the assessment books were

offered in evidence. Whether these showed residence of the persons assessed does not appear. It was said of this offer that "this satisfies us, in the abence of proof to the contrary, that the perons whose names are signed to this petition are in point of fact resident freeholders." In Texas Power & Light Co. vs. Brownwood Public Service Co., (Tex. Civ. App.), 87 S. W. 2d 557, it was held that the City Council in checking the signatures on a petition was wrong in confining its comparison to the poll tax records, but failed to point out what other sources should have been examined. In Hindman vs. Boyd, 42 Wash. 17, 84 Pac. 609, the court said that whether the petition was signed by qualified electors should be determined in some reasonable manner without pointing out what that is. We may, however, we think, resort to some presumptions in this connection, throwing the burden to prove the contrary on the opponent. The census of 1930 (Vol. 3, Part II, Montana-Wyoming, Page 1376) shows that the illiteracy in this state at that time was only 1.6 percent of the population of the state. The census of 1940 does not definitely show the percentage, but judging from the facts given the illiteracy at that time was very small and probably approximtaely that of 1930. Taking further into consideration the fact that one who can write is in all probability also able to read, we may presume, we think, in the absence of evidence to the contrary, that all signers of the petition in this case were qualified from the standpoint of being able to read as required by the constitution of this state. Again the census of 1940 shows that at least 97 3/5ths % of the inhabitants of this state were citizens of the United States. Only a very small percentage were not. We have no reason to think that this condition was changed up to 1945, and taking into consideration also the general characteristics of the citizenry of Cheyenne as generally known, we think we may also presume, in the

absence of evidence to the contrary, that the signers of the petition herein were citizens of the United States. We think, further following the law of probabilities, that the signers of the petition herein were persons of sound mind and were not convicted of infamous crimes unless the contrary is shown. That would leave for consideration only, in order to make a prima facie case, the question of age and the question of residence in Wyoming, in the county, and in Cheyenne, and if a person has lived in Cheyenne for the period of one year he has also, of course, lived in the county and in Wyoming during that length of time. We have already seen that it is not improper to resort to assessment books. These would not by themselves be sufficient inasmuch as many qualified electors might not appear therein. Further, they were not consulted in this case. Telephone directories and city directories are semi-public documents. Such documents are not, with out other evidence, ordinarily admissible in litigation between private parties, although it is stated that "books and other printed publications shown to be in general use among the class of persons interested in the matters which they contain have, however, been held admissible." 32 C. J. S. 627. The case at bar does not involve private litigation. Telephone directories and city directories are constantly consulted. Reliance is generally placed thereon. According to the law of probability the names of persons do not appear therein unless they are actually residents of the state. In State vs. Hahn, 38 La. Ann. 169, and People vs. Eppinger, 105 Calif. 36, 38 Pac. 538, 539, it was held that a city directory is admissible in evidence to show that a certain person is not in the city. Much more should the converse of this be able to be proven by such document, and it has indeed been held that it may be shown thereby that a defendant in a case was conducting a restaurant in a city rather than his wife. Johnson vs. Cousins,

110 Colo. 540, 135 Pac. 2d 1021. And residence once shown to have existed may be presumed to have continued. 31 C. J. S. 736, et seq. It is probable also that such documents do not contain the names of persons who are not of age, but we need not determine that point in the absence of evidence of the practice in that respect. It would seem to be certain that if a private individual were to undertake to satisfy himself in good faith whether or not a petition such as is involved herein contains the requisite number of qualified electors he would not hesitate to consult such directories and place reasonable reliance thereon. That being true we are unable to see why some probative force should not be given them in a proceeding such as that in the case at bar.

In this case five electors who also signed the petition gathered in a group to determine who of the signers were qualified electors of the city. The group spent some fifteen hours in going over the lists. As the names were called and one of the group identified a person as a qualified elector the name was initialed or otherwise marked by or on his behalf. The total number of names thus identified as qualified electors, aside from those who were registered was 494. Of these the witness Farris identified 218; the witness Smalley 139; the witness Durning 89; the witness Dalene 43, and the witness Spear 5. These witnesses subsequently testified in court that to their own knowledge these signers thus identified by them respectively were qualified electors. It is objected by the appellant herein that such testimony is a conclusion of the witnesses. Strictly speaking that is probably true. Hindman vs. Boyd, 42 Wash. 17, 84 Pac. 609, 613. See 32 C. J. S. 454. If a witness, however, also states the requisite qualifications of an elector then the foregoing objection would seem to largely lose its force. See 32 C. J. S. 90-91. We think that the testimony of the witnesses Smalley, Da-

lene and Spear was sufficient in that respect. The total number of electors signing the petition herein identified by them as above mentioned is 187, which, with the 978 herein above mentioned, would make 1165 or 120 less than the necessary ten percent required. Hence at least part of the electors identified by the witnesses Durning or Farris were necessary to make up the required number. The witness Durning testified that an elector is a person who has lived in the state one year and in the county 60 days, leaving out the requirement of residence in the city and of the necessary age. The only objection, however, that can be made to the testimony of the witness Farris is that he left out residence in the city as one of the requirements of the qualifications of an elector in this case. The witness was born in the City of Cheyenne in 1918 and had lived here ever since; his acquaintance with the electors undoubtedly arose mainly by reason of the residence of the latter in the City of Cheyenne. 147 of the signers identified by him (aside from persons who were registered) were shown to be listed in the city directory of 1942. A number of others were shown to be listed in the telephone directory of the city of February, 1944. The signers of the petition had added their place of residence in the city, and all except about a half dozen showed their residence to be in the city proper and not in the suburbs which had not yet been added as a part of the city. There is not the slightest suggestion of any fraud herein. It would seem that the facts and circumstances warranted the inference that more than 120 of the signers of the petition identified by the witness Farris as mentioned were actually residents of the state and the City of Cheyenne for the required time, and that it would be futile to send the case back to the trial court on this point merely to have the witness testify to that fact. A number of other signers, a total of 248, were identified as persons who were listed in the

telephone directory of the city of February, 1944. 1212 other signers were identified as persons who appeared in the directory of 1942 of the City of Cheyenne. Whether the books, too, or the pertinent parts thereof, should have been offered in evidence is a point not raised herein. Taking all the facts hereinbefore mentioned into consideration, we think that we cannot say that the trial court was not authorized to find that the requisite number of electors signed the petition herein.

III.

Counsel for the appellant contend that the statute relating to the manager form of government does not include cities and towns organized under a special charter. The first section of that statute, now Sec. 29-701, Wyoming Compiled Statutes of 1945, provides: "The provisions of this Act (§§ 29-701—29-921) shall apply to all cities and towns, which shall adopt said provisions as hereinafter provided, and the word 'city' wherever used in this act shall be construed to include towns." On its face the section is all inclusive. Wyoming has no municipalities except cities and towns. Cheyenne is a city. It is so denominated by Sec. 29-3401, Wyoming Compiled Statutes of 1945. Counsel for appellant call attention to the fact that a number of statutes have a provision similar to this: "The provisions of this Act shall apply to all incorporated cities and towns in the State of Wyoming, whether incorporated under a general law or a special charter," thus indicating clearly that specially chartered cities were included. But this addition was doubtless made merely out of an abundance of caution. The reading of a number of other statutory provisions, but which apparently are applicable to all municipalities in the state, is similar to that of Sec. 29-701, supra. Take Sec. 29-1901, Wyo. Compiled Statutes of 1945, for instance, which refers to zoning in cities and towns. It does not speci-

fically refer to specially chartered cities and yet it has been considered as applicable to the city of Cheyenne. Weber vs. City of Cheyenne, 55 Wyo. 202, 97 Pac. 2d 667. If there were any doubt on the point here made, the provisions of Sec. 29-735 of our statutes would dissipate it. It states: "All provisions of any statute granting a charter to a city which may adopt the provision of this Act * * * shall remain in force and effect" etc. This clearly indicates that specially chartered cities were intended to be included in the legislative Act in question here. The contention above made must, accordingly, be overruled.

IV.

The City of Cheyenne was organized under a special charter from the legislature. Sec. 29-3401, et seq., Wyo. Compiled Statutes of 1945. Thereafter in 1914 it adopted the commission form of Government and has been operating under that form ever since. Appellant contends that before Cheyenne can adopt the manager form of government it must first abandon the commission form of government, although it is argued that that might be done at the same election pursuant to a combined petition signed by 15 percent of the voters. Sec. 29-529 provides that the commission form of government may be abandoned by any city three years after the adoption thereof. Sec. 29-530 provides that "within five (5) days after the filing with the city clerk of a petition of electors equal in number to fifteen (15) per centum of the number of registered electors of such city," the mayor shall call an election to determine as to whether or not the commission form shall be abandoned. Sec. 29-531 provides that if the majority of votes determine that it shall be abandoned then such city shall "revert to the form of government under which it was governed prior to the adoption of the commission plan of government." Counsel for appellant

argue that these provisions must be complied with, and that hence a petition signed by only ten percent of the qualified electors is insufficient in this case in order that only the question of the adoption of the manager form of government may be submitted to vote. They argue that the foregoing provision requiring fifteen percent of the voters for a petition to abandon the commission form of government has not been repealed or modified by the provision requiring only ten percent of the voters to petition for the manager form of government; that the two provisions should be harmonized and both permitted to stand if possible. We agree with that contention, but we see no inconsistency in these provisions. It is quite clear under the provisions of Sec. 29-531, supra, that the provisions for the abandonment of the commission plan of government are applicable only when it is desired to return to the former form of government—in this case to the form originally existing under the special charter. It is an entirely different matter when it is decided that the city shall adopt a new form of government instead of returning to the old. Hence a petition in this case signed by ten percent of the qualified electors is sufficient. We might say in this connection that Sec. 29-529, supra, providing that the city may abandon the commission plan of government three years after adoption thereof is, we think, a severable provision, and we need not determine whether the manager form of government could be adopted previous to the expiration of that time.

V.

It is contended that the statute in question is unconstitutional in that (a) it violates Sec. 34 of Article 1 of our Constitution providing that "all laws of a general nature shall have a uniform operation"; (b) it violates Sec. 27, Article 3 of our Constitution which provides that no local or special law shall be passed for "incor-

poration of cities, towns or villages; or changing or amending the charters of any cities, towns or villages"; (c) it is in violation of Sec. 1, Article 13 of our Constitution which provides: "The legislature shall provide by general laws for the organization and classification of municipal corporations. The number of such classes shall not exceed four (4), and the power of each class shall be defined by general laws, so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters or the general laws of the territory may abandon such charter and reorganize under the general laws of the state."

Part of the argument of counsel is based on the contention that the statute creating a manager form of government creates a new class of cities because of the comprehensive nature of the powers conferred thereby, and counsel say that while heretofore the legislature has based its classifications of cities and towns on population, there is no reason that a new class may not be based on the form of government. We need not pass on that point. Sec. 29-735, Wyo. Compiled Statutes of 1945, providing that the existing laws of cities shall remain in force except in so far as inconsistent with the laws under the statute now considered in case a city should adopt the manager form of government, indicates, it would seem, that no new class of cities was intended to be created. We held in State vs. Sheldon, 29 Wyo. 233, 213 Pac. 92, that the statute relating to the commission form of government and that relating to the commission-manager form of government does not create a new class of cities. The rule of that case would seem to be directly applicable herein. The mere fact that the statute here involved is more comprehensive in the grant of powers does not seem to furnish a sufficient distinction. What we have said is emphasized in the case of Cheyenne. It was originally organized

under a special charter. Sec. 1, Article 13 of the Constitution provides that cities and towns under a special charter may abandon such charter and reorganize under the general laws of the state. Special proceedings are provided when a specially chartered city seeks to do so and organize as a city of the first class. Sec. 29-202, Wyo. Compiled Statutes of 1945. No such special proceeding is provided when a city seeks to come under the manager form of government, nor is there any other indication in the statute relating to such form of government that a special charter should be deemed to be abandoned if any city should adopt that form of government except in so far as the laws might be inconsistent.

Counsel for appellant argue that in some of our previous decisions the ruling of unconstitutionality was based on inequality of powers, but that the court could have based it upon lack of uniformity of operation. We are not certain that we have grasped the import of counsel's argument. They seemingly refer to the interrelation of some of the constitutional questions here involved, and their view in that respect seems to be correct. If the statement in 1 McQuillin Municipal Corporations, 635, is sound—and generally speaking it probably is—that the term "general law" is substantially equivalent to the term "law of a general nature", then the provision in Sec. 1, Article 13, supra, that statutes relating to municipalities organized under the general laws must grant the same powers and impose the same restrictions upon each class, seems merely to make a specific application of the provision that laws of a general nature must have uniform operation, as stated in Sec. 34, Article 1, supra. If unequal powers are granted to any class of cities or towns then there would seem to be an absence of uniform operation in the law. Conversely if the several classes each have been granted the identical powers no want of uniform-

ity of operation would seem to exist. See 1 McQuillin, supra, Sec. 212. Thus it was said in McConihe vs. The State of Florida, 17 Fla. 238, 270: "Uniformity indicates consistency, resemblance, sameness, a conformity to one pattern. The Constitution does not prohibit a classification of municipal corporations, but it does require that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. In this resemblance, in this sameness, in this conformity of each class to one pattern, consists the uniformity of the system, and this is essential to constitute a uniform system."

If a law operates uniformly, as that term is understood by the courts, it is a general law. I McQuillin, supra, 644. The converse is not necessarily true; that is to say, if that uniformity of operation is absent the law is not necessarily special or local. That is shown quite clearly in the case at bar. Speaking briefly, a special law is one that relates to particular persons, places or things. 59 C. J. 733, Crawford Statutory Construction, Sec. 81. A local law is one which operates only over a particular locality of the state. 59 C. J. 737. If, in the case at bar, it were held that the specific objections hereinafter considered rendered the statute here considered unconstitutional, we would not be warranted in holding that it is a special or local law by reason thereof. The statute would still apply to all cities and towns, would not be limited to particular places, but would, because of the objectionable features, fail to give the same powers to various classes as hereinafter illustrated, and would, accordingly, as counsel please to call it, not be uniform in operation. In other words, a law may be general, but not of uniform operation, and while particular unconstitutional parts of a law do not necessarily make the law a special or local one because of the absence of such uniformity of operation, the presence of such uniformity makes

the law, as already stated, a general one. It follows from what we have said that the statute in question here does not violate Sec. 27, Article 3, supra.

The requirement of uniformity of operation is satisfied if the statute applies uniformly; that is to say, in the same way within a class, provided that the classification is based on a reasonable distinction. 59 C. J. 722, 1 McQuillin, supra, 624. The fact that the adoption of the form of government here considered is dependent upon the vote of the people of the respective municipalities does not make the law a special one. Uniformity of operation does not depend upon the exercise thereof. If the powers granted are the same, that satisfies the constitutional requirement. While the courts of Pennsylvania apparently hold the contrary (1 McQuillin, supra, 667), the rule as stated is well settled in many other jurisdictions, including our own. State vs. Sheldon, supra; Bryan vs. Voss, 143 Ky. 422, 136 S. W. 884; State ex rel. vs. Ure, 91 Neb. 31, 135 N. W. 224; Eckerson vs. City of Des Moines, 137 Iowa 452, 115 N. W. 177; In Re Petition of Cleveland, 52 N. J. L. 188, 19 Atl. 17, 7 L. R. A. 431. A number of other cases are cited in the annotation in 67 A. L. R. 744. Since the statute here in question applies to all cities and towns in the state, it is quite plain that it is not a special law, but a general law, one of uniform operation, unless provisions are contained therein which negative and make impossible the required uniformity of operation, and affect the whole of the law. Counsel claim that there are such provisions, and we shall now turn to examine them.

(A)

Counsel claim that it is impossible for the mayor of the City of Cheyenne to determine in the period of five days whether or not the petition such as that involved herein contains the signatures of a requisite number

of qualified electors, while that is possible in most of the municipalities of the state. Because of this claimed impossibility and this difference, the statute here involved is said to be unconstitutional. Counsel cite the case of Sarlls vs. State ex rel. Trimble, supra, in which it appears that it was not shown that a sufficient number of electors had signed the petition involved in that case. That case is not applicable for the reason that in the case at bar it was shown that a sufficient number of electors had signed the petition. Counsel also cite Keane vs. Remy, 201 Ind. 286, 168 N. E. 10. In that case it was required to be determined that approximately 19,-000 qualified electors had signed the petition. The court held that it was not possible to do so in the particular city involved within five days. Hence the act was held unconstitutional in view of the fact that that did not apply to other communities. We cannot hold as a matter of law that it is impossible for the mayor of the City of Cheyenne to determine within five days whether 1285 qualified electors signed the petition. The testimony in this case indicated that it was done by others within that time. We think, moreover, that the requirement of the statute in reference to calling the election five days after the petition is filed is directory and not mandatory. That has been specifically held in Cassady vs. Jewell, 268 Ky. 643, 105 S. W. 2d 810, 812, under a situation similar to that presented in the case at bar. Hence the mayor of Cheyenne could have taken a reasonable time if the five days were not adequate to determine the sufficiency of the petition. It is stated in 59 C. J. 1078 that "A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, and made with a view to the proper, orderly, and prompt conduct of business, is usually directory," etc. To the same effect are Allen vs. Lewis, 26 Wyo. 85, 97, 177 Pac. 433. Horse Creek Conservation District vs. Lincoln Land

Company, 50 Wyo. 229, 59 Pac. 2d 763; Crawford Statutory Construction, Sec. 269.

(B)

Sec. 29-735, Wyo. Compiled Statutes of 1945, provides: "All provisions of any statute granting a charter to a city which may adopt the provisions of this Act (§§ 29-701—29-921), and all general statutes applicable to municipal corporations and elections therein, except as far as the same may be inconsistent with the provisions of this act, shall remain in force and effect and apply to any city which may adopt the provisions of this act, and all provisions of Chapter 84 of Laws of Wyoming for the year 1911 (§§ 29-501—29-528), except so far as the same may be inconsistent with the provisions of this act, shall apply to any city which may have adopted the same and which shall thereafter adopt the provisions of this act." Chapter 84 of the Laws of 1911 relates to the commission form of government. It is claimed that in view of the fact that the statute relating thereto is retained in force and effect, in so far as not inconsistent with the statute relating to the manager form of government, renders the whole of the latter invalid, since the law will not be of uniform operation in each of the various classes of cities, and that further, cities and towns organized under the general laws will not have the same powers. It is pointed out (a) that cities which have adopted the commission form of government will retain the power of recall, initiative and referendum provided for in the statute for the commission form of government, while those which have not adopted that form will not have that power, no mention thereof being made in the law relating to the manager form of government; (b) in cities now operating under the commission form of government when they later adopt the city manager government it will be unlawful to agree to work for a candi-

date for public office for a valuable consideration, but in cities not having adopted the commission form of government before adopting the city manager government such agreement will be lawful. The second of these objections seems to be without force in view of the fact that Sec. 31-2409, Wyo. Compiled Statutes of 1945 makes a like provision applicable to everyone alike, so we shall confine ourselves to the first of these objections. It is pointed out that Sheridan, for instance, a city of the first class which is operating under the commission form of government, would retain the powers of recall, initiative and referendum, while other cities of the first class, such as Casper, Rawlins and Rock Springs, which have not adopted that form, would have no such power. Again Cheyenne and Laramie are specially chartered cities. The act is made applicable to both. No classification thereof is attempted. Since Cheyenne is operating under the commission form of government it would, should it be organized with a manager form of government, retain the powers of recall, initiative and referendum, while Laramie, which has never adopted the commission form of government, would not have these powers. It would seem that the contention made in this respect by counsel for appellant is correct, and hence, leaving in force the statute relating to the commission form of government, would prevent the uniform operation of the statute. The further question, accordingly, arises whether it is necessary to declare the whole statute here involved to be unconstitutional. We discussed that question in McFarland vs. City of Cheyenne, 48 Wyo. 86, 42 Pac. 2d 413, where we held that unimportant parts of a statute, if severable, will not ordinarily render the whole legislative act unconstitutional. In that case, however, we held the whole law invalid. We discussed the same rule in State vs. Sheldon, supra. In that case we held that the statute relating to the commissioner-manager form of

government is invalid in so far as the various towns in the state are concerned, but we upheld the statute as to cities. We think we should apply the rule in that case in the case at bar, holding the provision keeping the laws relating to the commission form of government in force to be invalid, but upholding the remainder of the act. We think that the rule of the Sheldon case on this point is much more far reaching than our holding in this case. Furthermore, two of the principal cities in the state were operating under the commission form of government when the statute in question in the case at bar was adopted in 1923. The latter act was doubtless adopted, partially at least, for the specific purpose of enabling the cities above mentioned to come under it. To prevent a major object from coming into existence merely because of some incidental powers granted in the statute relating to the commission form of government would be incongruous. As pointed out by counsel for appellant themselves the statute here in question is broad and comprehensive; it contains more than one hundred sections, and it occupies thirty pages in the Compiled Statutes of 1945. The powers of recall, initiative and referendum must, in view of that fact, be considered an unimportant provision within the meaning of McFarland vs. City of Cheyenne, supra, and should not be permitted to vitiate the whole statute.

Counsel for appellant have also pointed out that in cities of the first class the mayor has the power of veto. Sec. 29-220, Wyo. Compiled Statutes of 1945. He does not have such power under the commission form of government, Sec. 29-511, Wyo. Compiled Statutes of 1945. And no provision for such veto is made under the manager form of government. Hence counsel contend that in some cities of the first class the mayor would have that power, in others not, and that this vitiates the whole law. In cities of the first class the mayor is elected as an official, independent of council-

men. Sec. 29-212. Under the manager form of government he is merely one of the councilmen, elected by the council as its presiding officer, and is merely by courtesy called the mayor. Sec. 29-705. By Sec. 29-704 the entire legislative authority is vested in the council. Under the law governing cities of the first class that is not true, since the mayor has the power of veto. All of these provisions cannot stand. We think it clear that in all cities of the first class which choose to come under the manager form of government, the mayor would be without the power of veto. Furthermore, it is doubtful that the mayor of the City of Cheyenne has the right to raise this question for it is said that "it is a firmly established principle of law that the constitutionality of a statute or ordinance may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute." 16 C. J. S. 157 to 160.

Counsel for appellant say that illustrations other than those given by them, and mentioned herein, could be pointed out to show the statute in question to be unconstitutional. Courts are reluctant, as counsel know, to declare a statute unconstitutional and they will do so only when it is absolutely necessary. 16 C. J. S. 208. They will not ordinarily inquire into the constitutionality of a statute on their own motion. 16 C. J. S. 220. The keen insight of counsel for appellant into the case, and their clear understanding thereof, as shown in their brief, makes it probable that they have found what to them have appeared to be the most vulnerable points in the case, and we do not think that we are called upon to go over our statutes, one by one, to find other possible points, not mentioned by counsel, which might look dubious from a constitutional standpoint.

The judgment of the trial court is, accordingly, affirmed.

RINER, C. J., and KIMBALL, J., concur.