MODERN GRAPHICS, INC.,
Respondent,

v.

BELGER CARTAGE SERVICES,
INC., Appellant.

No. WD 34420.

Missouri Court of Appeals,
Western District.

Feb. 7, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 27, 1984.

Application to Transfer Denied
May 15, 1984.

Gordon R. Gaebler, Kansas City, for appellant.

Leon G. Kusnetzky and David R. Sauvey, Kansas City, for respondent.

Before MANFORD, P.J., and CLARK and KENNEDY, JJ.

KENNEDY, Judge.

Plaintiff Modern Graphics had judgment against Belger Cartage, after a jury trial, for $14,345.16 for damaging 75 steel galleys and 146 forms used in the printing business. The galleys and forms had been purchased by Modern Graphics from Charles Stout and Sons Printers and were being moved from the seller's premises to that of Modern Graphics by Belger Cartage when the damage occurred. The jury verdict was for $20,000, but the court by order of remittitur limited recovery to $14,345.16. The remittitur was accepted by Modern Graphics and judgment was entered for that amount.

Belger does not here contest its liability, neither does it contest the fact that the damage rendered the forms useless. The salvage value of the damaged and the scrapped forms and galleys was $700.80, being 1,752 pounds at $.40 cents per pound.

Belger Cartage has appealed, claiming, among other points, that the court erred in giving its damage instruction. The instruction read as follows:

> If you find in favor of plaintiff, then you must award the plaintiff such sum as you may find from the evidence to be the reasonable cost to replace the damaged type forms and galleys less the salvage value of said forms and galleys.

The instruction is not in MAI.

The damage instruction was incorrect and requires a reversal and a new trial upon the issue of damages only.

The galleys and forms in question were a part of the tangible assets of Charles Stout and Sons Printers, which were purchased by the plaintiff Modern Graphics. The galleys and forms had been made up for specific printed materials for specific customers of Stout. The printer had kept them for use for reorders of the same materials. Some changes could be made in the forms without typesetting the entire form. The only value of the forms was to print the materials. In the absence of repeat orders, the forms would have no value except for salvage. Mr. Stout, a proprietor of the selling firm, testified that after the sale of the business to Modern Graphics, he went through the forms and "killed out all the forms that I figured was of no value whatsoever". This resulted in approximately 4,700 pounds of "dead" metal. There were 146 forms left, which Mr. Stout classified as "current". A great many of these forms—82, to be exact—were corporation stock certificate forms, which were printed by Stout upon orders from retailers Allen Stationery and Demaree's Stationery. Mr. Stout testified that his criterion for eliminating "dead" forms was "if the company had gone out of business, either that or they tell us that the form is no more in use, that's the only way I have of knowing". As to whether the companies were still in business whose stock certificates were on the damaged forms, Mr. Stout said: "I wouldn't know this. I mean the only ones that would know that would be Allen Stationery and Demaree's Stationery. They are the ones that the jobs came from."

Forty-six of the forms were various forms of Gas Service Company, and the rest were forms for various other businesses.

It would cost $14,345.16 to replace the 146 forms which were damaged. The replacement would be done by typesetters. In the process of typesetting a form, the forms are made of poured molten lead and tin done by a linotype machine. There were also included in the damaged forms some cold type, which was placed by hand.

These forms were used in the letter press printing method. The letter press printing method has given way to the more modern offset printing process. Mr. Stout said that there were very few letter press printers in the metropolitan area.

Only if the printer received an order for the form, would he have to replace it. In the three years that had elapsed between the damage and the trial, Modern Graphics had actually replaced only 17 of the forms at a cost of $1,013.80. It was Belger Cartage's theory that many of the forms would likely never be needed and therefore never be replaced, while the replacement of others would be postponed. There was evidence that this was the case.

There existed no market for the forms.

## I

 In such a case as this, where the investigation is as to the value of property in which there is no buying and selling, the value is a difficult thing for anyone to determine. The instruction in such a case should not confine the jury to a single method of determining value, but should allow the jury to consider all the numerous factors bearing upon the end question, i.e., what was the before-damage value to plaintiff of these forms? The instruction was in error when it told the jury that the before-damage value of the forms was their replacement value. Replacement value was undoubtedly one factor to be considered, but there were other factors, too. The factor strongly emphasized by the defendant was the obsolescence of many of the forms, a factor which the jury was unquestionably entitled to consider. *Airtight Sales, Inc. v. Graves Truck Lines, Inc.,* 207 Kan. 753, 486 P.2d 835, 838 (1971); *St. Louis-San Francisco Ry. Co. v. Kittrell,* 208 Okl. 147, 253 P.2d 1076, 1078 (1953); *Monahan v. Scott Cleaning Co.,* 241 S.W. 956 (Mo.App.1922); *Stickney v. Allen,* 10 Gray 352, 356 (Mass.1858).[1]

None of plaintiff's cases are contrary to the foregoing statement. The cases cited by Modern Graphics say no more than has been said above, that is, that replacement cost is one factor to be considered. *Airtight Sales, Inc. v. Graves Truck Lines, Inc.,* supra; *New York State Electric & Gas Corp. v. Fischer,* 24 A.D.2d 683, 261 N.Y.S.2d 310 (1965). Cases may be imagined where replacement cost would be the dominant factor to be taken into consideration, and perhaps the only factor, but that is not this case.

 It follows that the instruction was wrong. There is no applicable MAI instruction. The instruction should have told

---

1. "The measure of damages in an action for damages for loss or destruction of used articles of personal property having no fixed market value is the value of the goods to the owner; not any fanciful value which the owner might place upon them, but such reasonable value as they had to owner, considering the nature and condition of the goods and purposes for which they were adapted."
*St. Louis-San Francisco Ry. Co. v. Kittrell,* 208 Okl. 147, 253 P.2d 1076, 1078 (1953), quoting from *Oklahoma Transportation Co. v. Seminole Lodge No. 430, I.O.O.F.,* 202 Okl. 622, 217 P.2d 164, 165.
"We perceive no error in the court's action under the testimony presented in the record. As stated, the spread was of a special design and pattern, and it is apparent from the testimony, that it had no established market value. Of course, if there was a market value for such character of property, that would primarily be the true measure of damages. But where, as here, such an article has not been sufficiently bartered and sold to have a market value, then its value must be determined in some other way. In the present case the court so ruled, and permitted witnesses, who qualified for the purpose, to testify both for the plaintiff and the defendant as to the reasonable value of the property, taking into consideration the work and labor and time spent in its manufacture."
*Monahan v. Scott Cleaning Co.,* 241 S.W. 956 (Mo.App.1922).
"Whereas, in this case, it was admitted by the defendant's counsel, in argument, that the plates in question were made for the printing of labels or advertisements in the plaintiffs' names, which were to be used by them only, in their special business; and the exceptions show that it was in evidence that they were of very trifling value, except to the plaintiffs. Such things cannot with any propriety be said to have a market value. And the actual value to him who owns and uses them is the just rule of damages in an action against him who converts them to his own use."
*Stickney v. Allen,* 10 Gray 352, 356 (Mass.1858).

the jury that their verdict, if for plaintiff, should be for the reasonable economic, that is, the reasonable monetary value to plaintiff of the forms and galleys before the accident, less their salvage value of $700.80.[1]

## II

In view of the necessity for retrial, and the possibility of the recurrence of the questions presented, we will comment upon another point of defendant's.

Defendant complains of the exclusion from evidence of a Kansas City telephone directory and two business directories. Its purpose in offering them was to prove that several of the companies were no longer in business whose stock certificate forms were among those damaged and ruined. His theory was that those corporations out of business would not be re-ordering stock certificates and the forms were without any value except for salvage value. According to defendant's offer of proof, the directories would show that 47 of the 82 corporations whose stock certificate forms were damaged, were "out of business".

■ Such directories, if there is a proper foundation laid to establish their reliability, may be admissible, as an exception to the hearsay rule to prove the truth of their contents. *Williams v. Campbell Soup Co.*, 80 F.Supp. 865, 868 (W.D.Mo.1948); *State v. McInerney*, 63 Wyo. 280, 182 P.2d 28, 34–35 (1947). See also Fed.R.Evid. 803 (17) advisory committee note.

■ With respect to the two business directories, there was no foundation laid at all to establish their reliability. The court was clearly correct in excluding them. *Baker v. Atkins*, 258 S.W.2d 16, 20–21 (Mo. App.1953). See Fed.R.Evid. 803(17) advisory committee note; 6 J. Chadbourn, Wigmore on Evidence, §§ 1702–1706 (1976).

■ As to the ubiquitous phone directory, it may be accepted as an exception to the hearsay rule without any further foundation as to its reliability. The court may take judicial notice of the preliminary facts justifying its admission as against a hearsay objection.

■ Its relevance to a given issue, however, and its materiality is another thing. Appellants would attempt to infer from the fact of the omission from the phone book of the 47 companies' names, that there would be no further stock certificate orders from those companies. That conclusion would certainly not necessarily follow. It is a question then of probabilities, of the logical inferences to be drawn from the fact of the omission of a given name from the phone directory. The trial court had before it only the names of the corporations with no indication of addresses. We take it that this was the current telephone directory for Kansas City and environs. The determination of relevance, or remoteness, is left to the trial court's discretion, within certain limits, *State v. McInerney*, supra 182 P.2d at 34–35; 31A C.J.S. Evidence § 158 (1964); see also *Boehmer v. Boggiano*, 412 S.W.2d 103, 110 (Mo.1962), and we cannot convict the trial court of an abuse of discretion in excluding the phone book in the present case.[2]

## III

Defendant advances another point on its appeal, charging that the trial court erred in denying Belger's motion to strike plaintiff's petition and impose sanctions on account of Modern Graphics' failure to produce documents ordered by the trial court to be discovered to the defendant. It appears from appellant's brief, that it received in the course of the trial the documents which it claims had been withheld

**2.** A great many factors enter into the determination of admissibility or exclusion of offered evidence as against a challenge to its relevancy or materiality. No bright line rule has ever been formulated, and for this reason it is usually said that the question is left to the discretion of the trial judge. See 31A C.J.S. Evidence § 158; *State v. McInerney*, 63 Wyo. 280, 182 P.2d 28, 33–34 (1947), cited in this opinion, contains a helpful discussion of the subject, with particular reference to a phone book. For a penetrating discussion of the relevancy-materiality dimension, see 1 Wigmore on Evidence, §§ 27–29 (1940).

from it in the process of attempted discovery. The same discovery problems will not, it seems, be present in another trial, but if they reappear, can be disposed of by the court by well-known principles and practices.

The judgment is reversed and the cause is remanded for a new trial on the limited issue of the before-accident value of the damaged forms and galleys.

All concur.